512 S.E.2d 99

**The STATE of South Carolina, Respondent,**

v.

**James Neil TUCKER, Appellant.**

No. 24864.

Supreme Court of South Carolina.

Heard Oct. 6, 1998.
Decided Dec. 14, 1998.
Refiled Jan. 25, 1999.

2

4

6

Teresa L. Norris and Hillary Sheard, both of Center for Capital Litigation, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

## ORDER

After reviewing the Petition for Rehearing in this case, it is ordered that the opinion heretofore filed, Opinion No. 24864, filed December 14, 1998, be withdrawn and the attached opinion be substituted. The Petition for Rehearing is denied.

AND IT IS SO ORDERED.

/s/ Jean H. Toal, A.C.J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

/s/ Diane Schafer Goodstein, A.J.

MOORE, Justice:

Appellant was convicted of murder, armed robbery, grand larceny, and first degree burglary. On appeal, we affirmed his convictions but reversed his death sentence. *State v. Tucker*, 320 S.C. 206, 464 S.E.2d 105 (1995). After a resentencing trial, he was again sentenced to death. We affirm.

## FACTS

Appellant James Tucker broke into Shannon Mellon's house in the early morning hours of July 2, 1992.[1] Armed with a gun, he taped her wrists and ankles behind her back and left her on her bed while he searched for things to steal. Appellant then reentered Shannon's bedroom and shot her once in the head. While he was packing some of Shannon's clean clothes to take with him, Shannon regained consciousness, sat up, and said she could not see. Appellant shot her a second time in the head. He continued to pack and when he heard Shannon's labored breathing, he shot her a third time in the head. He then wrapped Shannon's body in a sheet and dragged it into the woods behind the house. Her body was discovered a week later. Appellant stole Shannon's car and drove to Spartanburg where he stayed with a friend for several days. He was apprehended in North Carolina on July 10, 1992.

## DISCUSSION

*Peremptory Challenges*

Appellant contends the trial court erred in ruling on his

---

1. Appellant was running from police who were looking for him for the murder of Rosalee Oakley in Sumter County. He was convicted and sentenced to death for Rosalee's murder in December 1994. We affirmed this conviction and sentence in *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996).

*Batson* motion.[2] We disagree.

All of the six peremptory strikes used by the State were used against blacks.[3] Appellant contends that similarly situated white jurors were not struck. Specifically, appellant questions the striking of Jurors Bonaparte, Gillings, Stokes, Jackson, Williams, and Mitchell.

Pursuant to *State v. Jones,* 293 S.C. 54, 358 S.E.2d 701 (1987), the trial judge must hold a *Batson* hearing when members of a cognizable racial group or gender are struck and the opposing party requests a hearing. The proponent of the strike is required to offer a race-neutral explanation. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral. Then, the opponent of the strike must show that the race-neutral explanation given was mere pretext. Pretext generally will be established by showing that similarly situated members of another race were seated on the jury. *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996).

The solicitor stated he struck Juror Bonaparte because he was argumentative and his answers were "dogmatic." Further, Juror Bonaparte had referred to his brother's murder and the former solicitor's refusal to prosecute. The solicitor stated he was afraid this juror harbored some resentment against the solicitor's office which might affect his deliberations. The trial court agreed that Juror Bonaparte was argumentative. The trial judge even pointed out how the juror had been argumentative with him. Appellant has failed to point out a white juror similarly situated to Juror Bonaparte who was not struck. Furthermore, counsel may strike venire persons based on their demeanor and disposition. *State v. Wilder,* 306 S.C. 535, 413 S.E.2d 323 (1991).

The solicitor stated he struck Juror Gillings because she lived in a high crime area, did not understand the court process, could not remember the three categories regarding views of the death penalty, and stated she could not sign a

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. We note appellant is white and his victim was also white.

death verdict form. Additionally, Juror Gillings' husband had been arrested for assault and battery of a high and aggravated nature. The trial court ruled the reasons were race-neutral. He agreed that Juror Gillings seemed to have trouble with abstract thinking and lacked an understanding about the court process. Again, appellant has failed to point to any similarly situated white jurors who were seated.

■ Furthermore, both the prosecutor and defense counsel must be allowed to make credibility determinations when exercising peremptory challenges. In *State v. Bell*, 305 S.C. 11, 406 S.E.2d 165 (1991), we declined to substitute our judgment for that of the solicitor regarding subjective responses to death penalty voir dire questions in the face of claims comparable white jurors were seated. *See also State v. Woodruff*, 300 S.C. 265, 387 S.E.2d 453 (1989).

■ The solicitor stated he struck Jurors Stokes, Jackson, Williams, and Mitchell because they appeared to be equivocal on the death penalty. Vacillating responses to voir dire questions regarding the death penalty will support the use of a peremptory strike against a *Batson* challenge. *State v. Elmore*, 300 S.C. 130, 386 S.E.2d 769 (1989). Where the solicitor perceives a person will have difficulty imposing the death penalty, he may exercise a peremptory challenge against the juror upon this ground as a racially neutral reason. *State v. Green*, 301 S.C. 347, 392 S.E.2d 157 (1990).

■ Because the trial judge's findings regarding purposeful discrimination rest largely upon his evaluation of the solicitor's credibility, we will give those findings great deference. *See Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *State v. Davis*, 306 S.C. 246, 411 S.E.2d 220 (1991). When the record does not support the solicitor's stated reason upon which the trial judge has based his findings, however, those findings will be overturned. *Davis, supra.* Here, the record supports the solicitor's reasons for striking these jurors. *Riddle v. State*, 314 S.C. 1, 443 S.E.2d 557 (1994). Mindful of the deference that we must give to the trial court, we hold the trial court correctly held that the solicitor's reasons for striking these jurors were not pretextual.

*Limiting of Voir Dire*

■ During voir dire, appellant sought to question the jury venire about their knowledge of the Sumter County trial, the imposition of the death penalty in that case, and the prior Calhoun County trial. The trial court denied appellant's motion because he did not want to unnecessarily plant any prejudicial information in the minds of the jurors. Appellant contends this was error. We disagree.

■ Appellant contends the trial judge erred in limiting his questions on voir dire. South Carolina Code Ann. § 16–3–20(D) (Supp.1995) grants a capital defendant the right to examine jurors through counsel. The manner in which these questions are pursued and the scope of any additional voir dire are matters of trial court discretion. *State v. Smart*, 278 S.C. 515, 299 S.E.2d 686 (1982). We hold the trial judge did not abuse his discretion.

Additionally, in *Mu'Min v. Virginia*, 500 U.S. 415, 111 S.Ct. 1899, 1905, 114 L.Ed.2d 493 (1991), the United States Supreme Court held a defendant is entitled to specific questions only if the failure to ask them would render his trial "fundamentally unfair." We hold the denial of appellant's motion did not render his trial "fundamentally unfair."

*Excusal of Juror Williams*

■ Appellant contends the trial court erred in excusing Juror Williams for cause. We disagree.

Juror Williams is a Jehovah's Witness minister. A general tenet of Jehovah's Witnesses is that they can not sit in judgment of another person. During the general qualifying of the jury pool, a bench conference was held after which, Juror Williams was excused by the trial court. The trial court then relayed what had occurred during the bench conference for the record. The trial court stated defense counsel had asked Juror Williams if he could sit in judgment following special counseling. Juror Williams said he thought that there was some counseling which might enable him to serve as a juror but the counseling might take four days. Appellant agreed with the trial court's recollection but he objected to the court's excusal of Juror Williams.

Appellant stated that the trial court's excusal prevented him from rehabilitating the juror during individual voir dire as to his view on the death penalty and the special circumstances which might allow him to sit as a juror. The trial court stated that he excused Juror Williams without regard to his view on the death penalty; it was based solely upon the fact that his religious beliefs would not allow him to sit as a juror and that the special circumstances which might allow him to serve would require four days of counseling.

 On review, the trial court's disqualification of a prospective juror will not be disturbed where there is a reasonable basis from which the trial court could have concluded that the juror would not have been able to faithfully discharge his responsibilities as a juror under the law. *State v. Green*, 301 S.C. 347, 392 S.E.2d 157 (1990); *State v. Gaskins*, 284 S.C. 105, 326 S.E.2d 132 (1985); *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981). The trial court properly excluded Juror Williams because his religious beliefs which prohibit judging another person would have prevented or substantially impaired the performance of his duties as a juror.

 Appellant also contends the trial court violated S.C.Code Ann. § 16–3–20 (Supp.1997), when he did not allow appellant to question Juror Williams. Section 16–3–20(D) provides, in pertinent part:

(D) Notwithstanding the provisions of Section 14–7–1020, in cases involving capital punishment a person called as a juror must be examined by the attorney for the defense.

We note appellant did ask Juror Williams two questions and we have held section 16–3–20(D) does not require the trial judge to allow counsel to engage in lengthy interviews of prospective jurors. *Smart*, 274 S.C. 303, 305, 262 S.E.2d 911, 912 (1980); *see also Atkins, supra.*

 In any event, we hold the trial court did not violate this section. Here, the trial judge excused Juror Williams prior to any individual voir dire being conducted. "The evident purpose of Section 16–3–20(D) is to secure to counsel for the defense in death cases the right to also question jurors during their voir dire examination. This is the sole limitation upon the discretion of the court in voir dire examinations

authorized under Code Section 14–7–1020.[4] That section is not repealed and the reference to it in Section 16–3–20(D) impliedly recognizes that, in all other respects, the discretion of the court in the conduct of voir dire examinations continues to exist." *State v. Smart,* 274 S.C. at 305, 262 S.E.2d at 912 (footnote added). *See also State v. Atkins,* 293 S.C. 294, 360 S.E.2d 302 (1987); *State v. Owens,* 277 S.C. 189, 284 S.E.2d 584, 586 (1981).

Section 14–7–1010 provides, in part: "The presiding judge shall at each term of court ascertain the qualifications of the jurors. The presiding judge shall determine whether any juror is disqualified or exempted by law and only he shall disqualify or excuse any juror as may be provided by law." There are no limitations or additional requirement under this section in capital cases. Thus, the trial judge alone is to determine whether a juror is qualified prior to the individual voir dire allowed pursuant to sections 14–7–1020 and 16–3–20. *See State v. South,* 285 S.C. 529, 331 S.E.2d 775 (1985) (in a capital case, trial judge did not abuse discretion by excluding two prospective jurors because of health and educational conflicts). The trial court's decision to excuse Juror Williams hinged on the required counseling which would take several days in order to allow Juror Williams to serve. We find no error.

*Admission of Appellant's Testimony from Prior Trial*

Appellant contends the trial court erred in admitting appellant's testimony from his prior Calhoun County trial. We disagree.

 Appellant objected on the ground that the testimony was inadmissible hearsay. We disagree. Under Rule 801(d)(2), SCRE, an admission by a party-opponent is not hearsay "if the statement is offered against a party and is (A)

---

**4.** Section 14–7–1020 provides:

The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called.

the party's own statement in either an individual or a representative capacity ..." Accordingly, appellant's testimony was not hearsay pursuant to Rule 801(d)(2) and the trial court did not err in admitting it.

Appellant also argues the admission of this testimony violated S.C.Code § 19–11–50 (Supp.1997). We disagree. This section provides: "The testimony of a defendant in a criminal case shall not be afterwards used against the defendant in any *other* criminal case, except upon an indictment for perjury founded on that testimony." (emphasis added). Here, the testimony was offered in a resentencing proceeding in the same criminal case. Furthermore, the testimony was merely cumulative to appellant's statements which had already been admitted in the guilt phase.[5] *State v. Blackburn,* 271 S.C. 324, 247 S.E.2d 334 (1978). Accordingly, the trial judge did not err in admitting this evidence.

*Submission of kidnapping as aggravating circumstance*

Appellant contends the trial court erred in submitting kidnapping as an aggravating circumstance. Appellant contends since the State did not raise kidnapping as an aggravating circumstance in the previous trial, it can not raise it in this re-sentencing. We disagree. This issue was decided in *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984), wherein we held there was no prejudice to appellant from the submission of an additional aggravating circumstance during a resentencing trial.

Further, appellant contends the State failed to prove the *mens rea* necessary for kidnapping. We disagree. In *State v. Jefferies,* 446 S.E.2d 427, 316 S.C. 13 (1994), we held the *mens rea* required for the crime of kidnapping as set forth in S.C.Code Ann. § 16–3–910 (1985) is "knowledge." Kidnaping is a continuing offense. The offense commences when one is wrongfully deprived of freedom and continues until freedom is restored. *State v. Hall,* 280 S.C. 74, 310 S.E.2d 429 (1983) (citing *State v. Ziegler,* 274 S.C. 6, 10, 260 S.E.2d 182, 184 (1979)). Here, Shannon was unquestionably

---

5. Furthermore, we have held "[i]n a resentencing hearing, each side has the right to put into evidence anything that is properly put into evidence during the guilt or sentencing phase of the previous trial." *State v. Stewart,* 288 S.C. 232, 235, 341 S.E.2d 789 (1986).

14

deprived of her freedom once appellant bound her with the duct tape. Further, we have held restraint constitutes kidnapping within the meaning of section 16-3-910,[6] regardless of the fact that the purpose of this seizure was to facilitate the commission of a sexual battery. *Hall*, 280 S.C. 74, 78, 310 S.E.2d 429 (1983). Here, the purpose of the restraint of Shannon was to facilitate in the commission of burglary and robbery.

In determining whether to submit an aggravating circumstance to the jury, the trial court is concerned only with the existence of evidence, not its weight. The aggravating circumstance is properly submitted if supported by any direct or circumstantial evidence. *State v. Bennett*, 328 S.C. 251, 493 S.E.2d 845 (1997). There was evidence to support the submission of kidnapping as an aggravating circumstance.

Appellant's remaining arguments are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Appellant's Issue 1 (change of venue): *State v. Caldwell*, 300 S.C. 494, 388 S.E.2d 816 (1990) ("When jurors have been exposed to such publicity, a denial of a change of venue is not error where jurors are found to have the ability to lay aside any impressions or opinions and render a verdict based on the evidence presented at trial."); Appellant's Issues 5–8 (juror qualification): *State v. Green*, 301 S.C. 347, 392 S.E.2d 157 (1990); *State v. Holmes*, 464 S.E.2d 334, 320 S.C. 259 (1995) (any error in qualifying juror was harmless where juror was alternate and never used in trial); Appellant's Issue 9: *State v. Plemmons*, 286 S.C. 78, 332 S.E.2d 765 (1985) (qualification of juror is addressed to trial judge's discretion and will not be disturbed unless wholly unsupported); Appellant's Issue 11: *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260, 270 (1996) (appellant's prior record showed extremely violent nature and future dangerousness and inability to be rehabilitated); Appellant's Issue 12: *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996) (forensic pathologist could testify as to pain victim endured and although physical torture was not submitted to

---

6. In *State v. Ray*, 310 S.C. 431, 437, 427 S.E.2d 171 (1993), we held "[t]he South Carolina aggravating circumstance of kidnapping is defined by S.C.Code Ann. § 16-3-910 as the unlawful seizure, confinement, inveigling, decoying, kidnapping, abducting or carrying away of any other person by any means whatsoever without authority of law."

jury as aggravating circumstance, evidence regarding torture was still admissible as going to circumstances of crime); Appellant's Issue 13: *State v. Gaskins,* 284 S.C. 105, 326 S.E.2d 132 (1985) (details of defendant's prior murder convictions, including photographs of prior murder victims, were properly allowed into evidence in sentencing phase); *Ray v. State,* 330 S.C. 184, 498 S.E.2d 640 (1998) (evidence of other crimes, including "gory photos" of victim, is admissible at sentencing phase of capital trial); Appellant's Issue 14: *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996) (photographs of victim's body are admissible in sentencing phase of capital trial to show circumstances of crime and character of defendant); *State v. Kornahrens,* 290 S.C. 281, 350 S.E.2d 180 (1986) (relevancy, materiality, and admissibility of photographs are left to sound discretion of trial court).

### *Proportionality Review*

We have conducted the proportionality review pursuant to S.C.Code Ann. § 16–3–25 (1985). We find the sentence was not the result of passion, prejudice, or other arbitrary factor and the evidence supports the jury's finding of the aggravating circumstances. Further, we find the sentence is not excessive or disproportionate to the penalty imposed in similar cases. *State v. Chaffee,* 285 S.C. 21, 328 S.E.2d 464 (1984), cert. denied, 471 U.S. 1009, 105 S.Ct. 1878, 85 L.Ed.2d 170 (1985). Accordingly, appellant's sentence is

**AFFIRMED.**

TOAL, Acting C.J., WALLER, BURNETT, JJ., and Acting Associate Justice DIANE SCHAFER GOODSTEIN, concur.