593 S.E.2d 486

**The STATE, Respondent,**

v.

**Bynum RAYFIELD, Appellant.**

No. 3728.

Court of Appeals of South Carolina.

Heard Dec. 10, 2003.
Decided Jan. 27, 2004.
Rehearing Denied March 18, 2004.

498

Jack B. Swerling, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney Charles H. Richardson and Senior Assistant Attorney General Harold W. Coombs, Jr., of Columbia; and Solicitor John R. Justice, of Chester, for respondent.

KITTREDGE, J.:

Bynum Rayfield was charged with three counts of first-degree criminal sexual conduct, three counts of committing a lewd act upon a child, and one count of contributing to the delinquency of a minor. The jury returned a verdict of guilty on all counts, and he was sentenced to an aggregate term of thirty years imprisonment. Rayfield appeals, arguing the circuit court erred in granting the State's *Batson*[1] motion and in charging the jury that the testimony of victims "need not be corroborated." We affirm.[2]

FACTS

Rayfield was accused of sexually abusing his two stepdaughters, his daughter, and two neighborhood girls who were

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. Rayfield's appellate counsel did not represent Rayfield at trial.

friends with his stepdaughters and daughter. All of the girls were minors and testified as to Rayfield's sexual misconduct. Rayfield denied any misconduct. The jury found Rayfield guilty of all charges, and he was sentenced.

## LAW/ANALYSIS

### I. Batson Issue

Rayfield argues the trial court erred in granting the State's motion under Batson. We agree, but we are constrained to conclude that Rayfield ultimately was not legally prejudiced by the trial court's error.

During the initial jury selection, Rayfield, through counsel, employed peremptory strikes against five prospective jurors. Four of the five prospective jurors struck were female.[3] The State introduced its Batson objection by indicating that defense counsel should be required to put forward a race and gender-neutral explanation for his strikes. The State noted, "that of the selected jurors there are nine males [and] three females...."[4] It further indicated that the motion "concerned ... the strikes of the white females." The State specifically identified Juror # 17, a white female, as "concern[ing] the State the most."

Defense counsel provided the trial court with the basis for striking each of the prospective female jurors. The trial court deemed these explanations "race and gender neutral." As discussed more fully below, the trial court found a *Batson* violation with respect to the only male, Juror # 70, struck by defense counsel.[5] The first jury was quashed and "a redraw of the jury" followed.

---

3. Defense counsel struck an additional female prospective juror during selection of alternate jurors. In total, Rayfield's trial counsel struck six prospective jurors, five of whom are female.

4. The first jury was comprised of eight blacks and four whites. The first alternate was a white male, and the second alternate is a black female.

5. While Juror #70 was the only male struck by the defense, the State struck only males.

The ensuing "redraw" resulted in no *Batson* challenge, and significantly, none of the jurors struck by defense counsel during the initial jury selection were seated on the second jury.[6]

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venire person on the basis of race or gender." *State v. Shuler,* 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001). The purpose of *Batson* is to "protect the defendant's right to a fair trial by a jury of the defendant's peers, protect each venireperson's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of our system of justice by seeking to eradicate discrimination in the jury selection process." *State v. Haigler,* 334 S.C. 623, 628–629, 515 S.E.2d 88, 90 (1999). Both the State and defendants are prohibited from discriminatorily exercising a peremptory challenge of a prospective juror. *Georgia v. McCollum,* 505 U.S. 42, 58, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). The trial court must conduct a Batson hearing "when members of a cognizable racial group or gender are struck and the opposing party requests a hearing." *State v. Tucker,* 334 S.C. 1, 8, 512 S.E.2d 99, 102 (1999).

Our supreme court has set forth the following procedure for a *Batson* hearing:

After a party objects to a jury strike, the proponent of the strike must offer a facially race-neutral [or gender-neutral] explanation. This explanation is not required to be persuasive or even plausible. Once the proponent states a reason that is race-neutral [or gender-neutral], the burden is on the party challenging the strike to show the explanation is mere pretext, either by showing similarly situated members of another race [or the other gender] were seated on the jury or the reason given for the strike is so fundamentally

---

**6.** Defense counsel struck two of the four females who were successfully challenged in the initial jury selection process. Juror #70 was not drawn for the second jury. The second jury was comprised of eight whites and four blacks, and the gender makeup was altered as well, as the second jury was comprised of seven males and five females.

implausible as to constitute mere pretext despite a lack of disparate treatment.

*State v. Ford,* 334 S.C. 59, 64, 512 S.E.2d 500, 503 (1999).

Whether a *Batson* violation has occurred must be determined by examining the totality of the circumstances, and "the opponent of the strike carries the ultimate burden of persuading the trial court the challenged party exercised strikes in a discriminatory manner." *Shuler,* 344 S.C. at 615, 545 S.E.2d at 810. With regard to a *Batson* motion, "[a]ppellate courts give the trial court's finding great deference on appeal, and review the trial court's ruling with a clearly erroneous standard." *Id.* When the record, however, does not support the reason upon which the trial court has based his findings, "those findings will be overturned." *Tucker,* 334 S.C. at 9, 512 S.E.2d at 103.

Rayfield's counsel offered two reasons for striking Juror # 70: (1) "he was retired [and] I didn't have information from what he was retired;" and (2) his "conservative" appearance.

Here, the trial court followed the State's lead and disregarded defense counsel's explanation that he struck juror # 70 due to his conservative appearance. Our courts, as well as other jurisdictions, have consistently found a prospective juror's demeanor and appearance as nondiscriminatory reasons for exercising a peremptory challenge of the juror. See *Tucker,* 334 S.C. at 8, 512 S.E.2d at 102 (finding no violation of *Batson* where State struck juror because he was argumentative and his answers were "dogmatic"); *State v. Wilder,* 306 S.C. 535, 538, 413 S.E.2d 323, 325 (1991) (holding that counsel may strike a juror based on demeanor and disposition); *State v. Smalls,* 336 S.C. 301, 309, 519 S.E.2d 793, 797 (Ct.App.1999) (finding no discriminatory intent inherent in defense counsel's explanation for striking jurors who appeared to counsel as "looking in a 'mean,' 'stern' or 'accusatory' manner"); *State v. Guess,* 318 S.C. 269, 273, 457 S.E.2d 6, 8 (Ct.App.1995) (noting that demeanor has been upheld in many jurisdictions as a legitimate reason to strike a juror) (citing *Lockett v. State,* 517 So.2d 1346 (Miss.1987)); see also *Jones v. State,* No. 05–02–00357, 2003 WL 21649964, at 3 (Tex.Crim.App. July 15, 2003) (upholding trial court's denial of defendant's *Batson* motion where State's explanation for striking juror was that the juror

wore leather clothing and had a "very liberal outward appearance").

■ Although not argued by the State, we note South Carolina's rejection of the "dual motivation doctrine in the *Batson* context." See *Payton v. Kearse*, 329 S.C. 51, 59, 495 S.E.2d 205, 210 (1998) (noting that South Carolina follows the "tainted" approach whereby a discriminatory explanation for the exercise of a preemptory challenge will vitiate other nondiscriminatory explanations for the strike). Consequently, Rayfield's counsel's stated reliance on the appearance of Juror # 70 will not cure a discriminatory purpose. The question then becomes whether, under our deferential standard of review, the record sustains the trial court's determination that Juror # 70 was struck because of his gender. We find the record contains no evidence indicating Juror # 70 was struck because he is a male.

The State's disjointed and moving-target approach to its *Batson* motion created confusion. The State began its motion with a reference to Juror # 17, a white female, requesting a "race and gender-neutral explanation" for the strike. On the heels of informing the trial court that its focus was the striking of white females, the State mentioned Juror # 70, the sole male struck by defense counsel. The colloquy returned to the gravamen of the State's Batson motion, the striking of females, especially Juror # 17 which "concern[ed] the state the most." During the argument, the State repeatedly assigned discriminatory motives to defense counsel in striking females. When the trial court determined that defense counsel's reasons for striking the females were nondiscriminatory, the State resurrected its challenge to Juror # 70. Defense counsel reiterated his position that "juror [# 70] appeared to be a very conservative individual, to me ... he just appeared from appearance that he would be the type likely to side with the State." The trial court ignored defense counsel's reliance on this juror's conservative appearance and granted the State's Batson motion, finding Juror # 70 was struck because he was a male: "The only reason given for striking Juror # 70 y(3)27 is that he was retired y(3)27 but you allowed Juror # 36 [a female] to serve [who was also retired] y(3)27 I'm going to find that [in regard to Juror # 70] that was not a gender neutral reason."

As noted, the first jury was comprised of nine males and three females. Defense counsel used the allotted number of strikes, exercising all but one against females. Clearly, Rayfield's counsel was not discriminating against males. The totality of the facts and circumstances compels a finding that no gender based discrimination was associated with the striking of Juror # 70. Defense counsel asserted to the trial court: "[T]hey're complaining I was striking all these females and seating all these men, and then there's one man I strike y(3)27 [and] out of all these jurors, it's certainly not a pattern of discrimination against men." We agree and find absolutely no gender based discrimination in the exercise of a preemptory challenge against Juror # 70. We therefore find that the reasons asserted for the strike of Juror # 70 were gender neutral, and the State fell short of demonstrating purposeful gender based discrimination. It was error for the trial court to grant the State's *Batson* motion.

We nevertheless find no reversible error pursuant to the supreme court precedent of *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996). In Adams, the trial court erred in granting the State's *Batson* motion and quashing the jury. Because the jury ultimately selected had none of the persons defense counsel struck from the first jury panel, the supreme court found "no prejudice resulted from the judge's error" and affirmed Adams' convictions. *Id.* at 126, 470 S.E.2d at 373. In so holding, the court in Adams recognized that no juror's equal protection rights are violated where the trial court improperly quashes a jury panel. In addition, the court in Adams referenced the settled principle that "[a] defendant has no right to trial by any particular jury." *Id.* But *cf.* *Ford*, 334 S.C. at 66, 512 S.E.2d at 504 (holding that reversal and granting of a new trial is a proper remedy where the trial court erred in finding defendant violated *Batson* in striking certain jurors and any challenged juror was seated on the second jury).[7]

---

7. We acknowledge Rayfield's concern with the loss of a properly selected jury, and the concomitant desire of the State to avoid a particular jury for a variety of reasons connected to the State's perceptions of its chances of obtaining a guilty verdict. The application of the holding in *Adams* may, in some cases, allow the State to benefit from its pursuit of a meritless *Batson* motion by providing it with another

## II. Charge Pursuant to S.C.Code Ann. § 16–3–657

 Rayfield argues the trial court erred in charging the jury that the testimony of the victims "need not be corroborated" pursuant to S.C.Code Ann. § 16–3–657 (Supp.2002). We disagree.

 The trial court is required to charge the correct law of South Carolina. *State v. Peer*, 320 S.C. 546, 553, 466 S.E.2d 375, 380 (1996). Jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error. *State v. Sims*, 304 S.C. 409, 422, 405 S.E.2d 377 (1991). The substance of the law is what must be instructed to the jury, not any particular verbiage. *State v. Rabon*, 275 S.C. 459, 462, 272 S.E.2d 634, 636 (1980).

The trial court instructed the jury that section 16–3–657 provides that "the testimony of a victim need not be corroborated." The challenged charge withstood appellate scrutiny in *State v. Schumpert*, 312 S.C. 502, 509, 435 S.E.2d 859, 863 (1993). We consequently find no reversible error in the trial court's instruction to the jury regarding the corroboration of the victims' testimony. Consistent with Schumpert, we note the trial court: (1) properly instructed the jury that they were the sole finders of fact with the discretion to determine the credibility of the witnesses; (2) correctly charged our state's constitutional mandate prohibiting the court from commenting on the facts and stated: "The law does not permit me to have an opinion about the facts in this case;" and (3) correctly charged the State's burden of proof. While the section 16–3–657 charge is not mandatory, such charge does not constitute reversible error when the Schumpert safeguards are present.

## CONCLUSION

Having determined that Rayfield's appeal is controlled by the supreme court precedent of *State v. Adams* and *State v. Schumpert*, respectively, the judgment of the circuit court is

AFFIRMED.

HEARN, C.J., and HOWARD, J., concur.

---

opportunity to draw a jury more to its liking. We are, however, bound to apply the holding in *Adams*.