596 S.E.2d 475

**The STATE, Respondent,**

v.

**Hastings Arthur WISE, Appellant.**

No. 25819.

Supreme Court of South Carolina.

Heard Feb. 3, 2004.

Decided May 11, 2004.

Rehearing Denied June 9, 2004.

18

Deputy Chief Attorney Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense, Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia, and Solicitor Barbara R. Morgan of Aiken, for Respondent.

Justice BURNETT:

Hastings Arthur Wise (Appellant) was convicted of four counts of murder, three counts of assault and battery with

intent to kill, one count of second-degree burglary, and four counts of possession of a weapon during the commission of a violent crime. The jury found two aggravating circumstances: a murder was committed during the commission of a burglary; and two or more persons were murdered by one act or pursuant to one scheme or course of conduct. *See* S.C.Code Ann. § 16–3–20(C) (2003 and Supp.2003).

Appellant was sentenced to death on the jury's recommendation for each count of murder, twenty years consecutive on each count of assault and battery with intent to kill, fifteen years concurrent for burglary, and five years concurrent on each weapon possession conviction. This appeal follows.

## FACTS

Appellant drove into the employees' parking lot at the R.E. Phelon manufacturing plant in Aiken County at about 3 p.m. on September 15, 1997, as the work shifts were changing. He had been fired from his job as a machine operator at the plant several weeks earlier.[1]

Stanley Vance, the security officer on duty, testified he believed Appellant had come to pick up his personal belongings which were stored in the guard station. Appellant exited his vehicle, walked to the guard station, and shot Vance once in the upper abdomen with a semi-automatic pistol.

During the guilt phase of the trial, in addition to two security officers, the State presented fifteen employees as witnesses to the shootings at the plant. All identified Appellant as the perpetrator. Their testimony, along with the testimony of law enforcement investigators and the medical examiner, established the following events:

After tearing out telephone lines in the guard station, Appellant entered the plant's human resources office. He shot personnel manager Charles Griffeth, age 56, twice in the back, killing him as he sat at his desk. Appellant held his pistol to the head of a secretary as he exited Griffeth's office,

---

1. Appellant did not present a defense. His lawyers' examination of some plant employees during the trial indicated Appellant may have been upset because he had not received a promotion from machine operator to the tool and dye division.

tore out the secretary's telephone line, and continued into the plant.

Appellant walked to the tool and dye area where several employees were working. He fired his pistol repeatedly at the employees, killing David W. Moore, age 30, and Earnest L. Filyaw, age 31. Lucius Corley and John Mitchell were wounded. Mitchell was shot in the chest, and suffered extensive and severe internal injuries which required multiple surgical procedures.

Appellant walked toward another area of the plant as employees, who gradually had become aware of the shootings in the plant, fled the building. He shot Cheryl Wood, age 27, in the back and leg as she stood near a doorway. She was fatally shot after she fell to the floor, described by the prosecutor as an execution-style slaying.

Appellant continued firing his pistol at other employees in other areas of the plant. Witnesses observed Appellant reload his pistol several times as he progressed through the plant. Investigators recovered four empty, eight-round magazines at the scene, plus four full magazines and 123 additional rounds in Appellant's possession. Some witnesses related Appellant was "screaming something" unintelligible during the shootings.

Appellant walked to an upstairs office, shooting through glass windows and doors. He entered an office, lay down on the floor, and swallowed or attempted to swallow an insecticide. Police found Appellant lying there semi-conscious, arrested him, and transported him to a hospital.

The trial judge ruled Appellant competent to stand trial. Appellant did not present witnesses or evidence during the guilt or sentencing phases of the trial. He refused before trial to identify for his attorneys family or friends as favorable witnesses. During the sentencing phase, Appellant refused to allow his attorneys to call thirteen mitigation witnesses to present evidence that life imprisonment without parole was the appropriate sentence.

Appellant's refusal prompted the trial judge to again have Appellant examined during the trial by a psychiatrist, who again testified Appellant was competent. Although his attor-

neys had evidence of the presence of the hallucinogenic drug LSD in his body when the shootings occurred, Appellant told the judge "I was in total control of my faculties at the time."

## ISSUES

I.   Did the trial judge err in excusing a potential juror for cause during individual voir dire without allowing defense counsel to examine her about personal religious beliefs that would preclude her from finding Appellant guilty of the crimes charged?

II.   Did the trial judge err in refusing to allow a surviving victim, called by the State to provide victim-impact evidence, to testify on cross-examination that he previously had stated Appellant should not receive the death penalty?

## STANDARD OF REVIEW

In criminal cases, the appellate court sits only to review errors of law which have been properly preserved, i.e., the issue has been raised to and ruled on by the trial court. *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001); *State v. Cutter*, 261 S.C. 140, 147, 199 S.E.2d 61, 65 (1973); *State v. Byram*, 326 S.C. 107, 113, 485 S.E.2d 360, 363 (1997). The appellate court is bound by the trial court's factual findings made in response to preliminary motions when there is conflicting testimony, or when the findings are supported by any evidence and not clearly erroneous or controlled by an error of law. *State v. Quattlebaum*, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000); *State v. Asbury*, 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997). The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002); *State v. Frank*, 262 S.C. 526, 533, 205 S.E.2d 827, 830 (1974). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000); *State v. Manning*, 329 S.C. 1, 7, 495 S.E.2d 191, 194 (1997).

## DISCUSSION

### I. *Individual voir dire issue*

■ Appellant argues the trial judge erred in excusing a potential juror (Juror) for cause during individual voir dire without first permitting his lawyers to personally examine her. Appellant contends the judge did not have the discretion to excuse Juror. We disagree.

Juror was the fourth venireman examined during individual voir dire. Responding to questions from the trial judge, Juror testified she would accept and apply the law as instructed by the court. She testified she could find a defendant not guilty in a criminal case; however, she could not find a defendant guilty. Juror testified she was a member of the "Holiness" religion, did not believe in judging anyone, and would be unable under any circumstances to find a defendant guilty. Juror testified, "I mean, they could be guilty but I'm not going to sit on the jury stand and say that they're guilty because it's not right to say whether they're guilty or not."

The judge and attorneys discussed Juror's responses outside her presence. The judge requested Appellant's attorneys suggest questions he might ask Juror. No questions were suggested, but Appellant's attorneys requested an opportunity to examine and possibly rehabilitate Juror by clarifying her responses. The judge denied the request, but examined her further about the source of her beliefs. Juror testified her beliefs were personal, and she was unaware of any pastoral counseling or similar program she could undergo in order to sit in judgment of another person. Juror testified she could not find someone guilty in "so serious as this case is" and she did not "want to have [any] part in saying what, you know, where he's going to be at, you know."

The judge excused Juror for cause over defense counsel's objection, relying primarily on *State v. Tucker*, 334 S.C. 1, 512 S.E.2d 99 (1999).

■ "The presiding judge shall determine whether any juror is disqualified or exempted by law and only he shall disqualify or excuse any juror as may be provided by law." S.C.Code Ann. § 14–7–1010 (Supp.2003). The authority and responsibility of the trial court is to focus the scope of the voir

dire examination as set forth in S.C.Code Ann. 14–7–1020 (Supp.2003). *State v. Hill,* 331 S.C. 94, 103, 501 S.E.2d 122, 127 (1998) (citing *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984)). A capital defendant has the right to examine jurors through counsel pursuant to S.C.Code Ann. 16–3–20(D) (Supp. 2003), but that statute does not enlarge the scope of voir dire permitted under Section 14–7–1020.[2] *Id.* The scope of voir dire and the manner in which it is conducted generally are left to the sound discretion of the trial judge. *Id.* (citing *State v. Smart,* 278 S.C. 515, 299 S.E.2d 686 (1982), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991)).

"Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 1908, 114 L.Ed.2d 493, 509 (1991). A capital defendants right to voir dire, while grounded in statutory law, also is rooted in the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *See id.; Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492, 503 (1992). To be constitutionally compelled, it is not enough that a question may be helpful. Rather, the trial court's failure to ask or allow a question must render the defendant's trial fundamentally unfair. *Mu'Min,* 500 U.S. at 425, 111 S.Ct. at 1905, 114 L.Ed.2d at 506; *State v. Tucker,* 334 S.C. 1, 10, 512 S.E.2d 99, 103 (1999).

An appellate court will not disturb the trial court's disqualification of a prospective juror when there is a reasonable basis from which the trial court could have concluded the

---

2. Section 14–7–1020 provides:

The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called.

Section 16–3–20(D) provides:

Notwithstanding the provisions of Section 14–7–1020, in cases involving capital punishment a person called as a juror must be examined by the attorney for the defense.

juror would not have been able to faithfully discharge his responsibilities as a juror under the law. *Tucker*, 334 S.C. at 11, 512 S.E.2d at 104 (citing *State v. Green*, 301 S.C. 347, 392 S.E.2d 157 (1990)).

We conclude the trial judge properly excused Juror for cause. Section 14–7–1010 requires the judge determine whether a juror is disqualified or exempted by law, a determination that may be made before parties are given an opportunity to examine the juror in a death penalty case. A juror who testifies she would not be able to find a criminal defendant guilty under any circumstances is disqualified by law. Such a person may not be seated because she would be unable to fulfill her duties as a juror or apply the law as it is given to her by the court. *See also State v. Plath*, 281 S.C. 1, 5, 313 S.E.2d 619, 621 (1984) (court repeatedly has said test of juror's qualification under Section 16–3–20 is ability to both reach a verdict of either guilt or innocence and, if necessary, to vote for death sentence).

In addition, the trial judge's excusal of Juror is supported by *Tucker, supra*. In that case, the trial court excused for cause a juror, a Jehovah's Witness, because the juror stated he could not sit in judgment without undergoing religious counseling that might take four days. The juror was excused during the general qualifying of the jury pool. We rejected the argument that the excusal improperly prevented defense counsel from rehabilitating the juror during individual voir dire as to his views on the death penalty and the special circumstances which might allow him to sit as a juror. We found the trial court properly excluded the juror because his religious beliefs which prohibit judging another person would prevent or substantially impair the performance of juror's duties; therefore, a reasonable basis existed in support of the trial court's excusal of the juror for cause. *Tucker*, 334 S.C. at 10–11, 512 S.E.2d at 103–104.

In the present case, the trial judge's lengthy colloquy with Juror revealed she would be unable to return a verdict of guilty under any circumstances. Her belief she should not sit in judgment of another rendered her incapable of fulfilling her basic responsibilities as a juror, and would have prevented or substantially impaired the performance of her duties as a

juror. Consequently, a reasonable basis existed for the trial judge's excusal for cause of Juror. *See* Sections 14–7–1010 and –1020; *Tucker, supra; Plath, supra.* Furthermore, we conclude her excusal for cause did not render Appellant's trial fundamentally unfair. *See Mu'Min, supra; Tucker, supra.*

Appellant argues we should find *State v. Atkins,* 293 S.C. 294, 360 S.E.2d 302 (1987), *overruled on other grounds by Torrence, supra,* to be controlling, not *Tucker.* In *Atkins,* the trial court excused four potential jurors for cause, without allowing counsel for either side to examine them, after concluding they were opposed to the death penalty.

We emphasized in *Atkins* that case law and the mandatory language of Section 16–3–20(D) "make it clear that the trial courts discretion does not extend so far as to authorize it to refuse counsel the right to conduct any examination at all in a capital case. When our legislature has seen fit to enact special statutory requirements to be followed in death penalty cases, the courts should endeavor to see that these are strictly followed." *Atkins,* 293 S.C. at 297, 360 S.E.2d at 304.

We explained in *Atkins* that further examination by counsel might reveal the juror would be able to subordinate his personal views and apply the law of the state. The error could not be deemed harmless as the defendant was sentenced to death; therefore, we reversed and remanded for a new penalty phase proceeding. *Id; see also State v. Owens,* 277 S.C. 189, 192, 284 S.E.2d 584, 586 (1981) (finding error in trial courts dismissal of two potential jurors for cause, without allowing defense counsel to examine them, when jurors indicated opposition to death penalty, although issue was moot because defendant was given a life sentence).

*Atkins* is distinguishable on two grounds. First, the juror qualification issue in *Atkins* was the ability of jurors to consider both the death penalty and life imprisonment. In the present case, the qualification issue was whether Juror believed she could sit on a jury in judgment of another person at all. Her comments and belief she could never find someone guilty in such a serious case disqualified her, at a more fundamental level than the jurors in *Atkins,* to serve. *See Plath, supra.*

Second, it is clear from this record that further examination of Juror would have been unlikely to reveal she could subordinate her views and apply the law of the state. Juror unequivocally and repeatedly stated during thorough examination by the trial judge she would be unable to find the defendant guilty. In fact, Appellant's attorneys were given an opportunity to suggest additional questions to the trial judge, but suggested none. Nevertheless, the trial judge after conferring with counsel examined Juror further to ascertain the basis of her beliefs.

Appellant also contends *Tucker* is distinguishable because Juror was excused during individual voir dire, while the juror in *Tucker* was excused during the general juror qualification process. This distinction is unpersuasive because the basic requirement of ensuring a juror is qualified and able to render a fair and just verdict to either party based on the facts and the law applies throughout the jury selection process.

We do not intend, by this decision or the decision in *Tucker*, to dilute the mandate of Section 16–3–20(D) as expressed in *Atkins, supra*. When the record reveals a juror plainly is not qualified, after thorough examination by the trial judge, to serve and it does not reasonably appear further examination would likely reveal the juror could subordinate his views and apply the law of the state, a reasonable basis exists for excusal for cause of the juror without further examination by defense counsel. Accordingly, the trial judge did not err and properly exercised his discretion in excusing Juror for cause.

## II. Cross-examination of victim impact witness

■ Appellant contends the trial judge erred by refusing to allow a surviving victim to testify on cross-examination during the sentencing phase of the trial that he did not personally believe appellant should receive the death penalty. We disagree.

Security officer Vance testified during both the guilt and sentencing phases of the trial. Vance was shot once in the upper abdomen by Appellant, resulting in temporary paralysis in his legs, rendering him totally disabled, unable to work. Vance testified he suffers constant, intense pain requiring daily medications. He has weekly psychiatric appointments

and has been diagnosed with depression and post-traumatic stress disorder. Vance testified he knew Appellant only by sight and had little or no interaction with him on the job.

During cross-examination in the sentencing phase, Appellant's attorney attempted to question Vance about a statement he made to a newspaper reporter shortly after the shootings, in which Vance reportedly said Appellant should not receive the death penalty. The trial judge sustained the State's objection and did not allow the testimony.[3]

A capital defendant is prohibited from directly eliciting the opinion of family members or other penalty-phase witnesses about the appropriate penalty. Such questions go to the ultimate issue to be decided by the jury—life in prison versus the death penalty—and are properly reserved for determination by the jury. *State v. Matthews*, 296 S.C. 379, 393, 373 S.E.2d 587, 595 (1988) (affirming exclusion of family members' opinion about appropriate penalty and what effect the death penalty would have on them, although defendant could show no prejudice because his mother expressed her opinion to jury despite judge's ruling); *State v. Adams*, 277 S.C. 115, 283 S.E.2d 582 (1981) (whether death penalty should be imposed is an ultimate issue reserved for jurys determination), *overruled on other grounds by Torrence, supra.*

Similarly, a capital defendant may not present a penalty-phase witness to testify explicitly what verdict the jury "ought" to reach. *Torrence*, 305 S.C. at 51, 406 S.E.2d at 319. A capital defendant may not present witnesses merely to testify of their religious or philosophical attitudes about the death penalty. *Id.*

On the other hand, a capital defendant may present witnesses who know and care for him, and who are willing on that basis to plead with the jury for mercy on his behalf. Thus, a close relative of a defendant, such as his mother, may make a general plea for mercy for the life of her son. *Torrence*, 305 S.C. at 51, 406 S.E.2d at 319. A close relative of

---

**3.** The judge earlier had refused to allow Appellant to question Vance about the same alleged statement to the media during the guilt phase, as it was irrelevant. This ruling obviously was proper. Appellant now challenges only the ruling during the penalty phase.

a defendant, such as his sister, may be asked whether she wants the defendant to die, which is akin to asking her to make a general plea for mercy and not explicitly directed toward eliciting her opinion of what verdict the jury should reach. *State v. Johnson,* 338 S.C. 114, 125–127, 525 S.E.2d 519, 524–525 (2000) (while trial court erred in limiting sister's testimony, defendant was not prejudiced because sister was able to make a general plea for mercy on his behalf and clearly expressed her love and affection for him).

We are unpersuaded by Appellant's argument he should have been allowed to cross-examine Vance pursuant to *Torrence* and *Johnson.* We accept as true the proffer by Appellant's attorney Vance would testify he told the media shortly after the shootings he did not personally believe Appellant should receive the death penalty. However, such a statement by Vance would not constitute a plea for mercy on behalf of Appellant. Instead, it would constitute Vance's opinion of what verdict—life in prison versus the death penalty—the jury should reach. Accordingly, the trial judge properly disallowed the question, recognizing it was an attempt to elicit an inadmissible opinion from a witness. *See Matthews,* 296 S.C. at 393, 373 S.E.2d at 595.

## PROPORTIONALITY REVIEW

As required, we conduct a proportionality review of Appellants death sentence. S.C.Code Ann. 16–3–25(C) (2003). The United States Constitution prohibits the imposition of the death penalty when it is either excessive or disproportionate in light of the crime and the defendant. *State v. Copeland,* 278 S.C. 572, 590, 300 S.E.2d 63, 74 (1982). In conducting a proportionality review, we search for similar cases in which the death sentence has been upheld. *Id.;* S.C.Code Ann. 16–3–25(E) (2003).

After reviewing the entire record, we conclude the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jurys finding of statutory aggravating circumstances for each of the four murders is supported by the evidence. Furthermore, a review of prior cases shows the death sentence in this case is proportionate to that in similar cases and is neither excessive nor disproportionate to the

crime. *See State v. Shuler*, 353 S.C. 176, 577 S.E.2d 438 (2003) (death penalty warranted for defendant convicted of murders of former live-in lover, lovers thirteen year-old daughter, and lovers mother; aggravating circumstances included two or more persons were murdered pursuant to one scheme or course of conduct, and murder was committed during commission of burglary); *State v. Wilson*, 306 S.C. 498, 413 S.E.2d 19 (1992) (death penalty warranted where defendant was convicted of two counts of murdering two schoolchildren, eight counts of assault and battery with intent to kill, one count of assault and battery of a high and aggravated nature, and one count of illegally carrying a firearm in shootings at an elementary school); *State v. Hughey*, 339 S.C. 439, 529 S.E.2d 721 (2000) (death penalty warranted where defendant shot and killed former girlfriend and another woman in a home); *State v. Rosemond*, 335 S.C. 593, 518 S.E.2d 588 (1999) (death penalty warranted where defendant shot and killed former girlfriend and her young daughter in their home); *State v. Reed*, 332 S.C. 35, 503 S.E.2d 747 (1998) (death penalty warranted where defendant shot and killed both parents of his former girlfriend).

**AFFIRMED.**

TOAL, C.J., MOORE, PLEICONES, JJ., and Acting Justice ALEXANDER S. MACAULAY, concur.