# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Raymond Lewis Young, Appellant.

Appellate Case No. 2013-000149

---

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

---

Opinion No. 2017-UP-426
Submitted September 7, 2017 – Filed November 15, 2017

---

### REVERSED AND REMANDED

---

J. Falkner Wilkes, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General J. Benjamin Aplin, both of Columbia,
and Solicitor W. Walter Wilkins, III, of Greenville, for
Respondent.

---

**PER CURIAM:** Raymond Lewis Young appeals his convictions and sentences of
seven counts of attempted murder, one count of second degree assault and battery

by mob, and one count of conspiracy.[1]  Young argues, among other issues, the trial court erred in denying his *Batson*[2] motion.  We reverse and remand for a new trial.

## FACTS/PROCEDURAL HISTORY

The codefendants were tried together for their involvement in a shootout at a Li'l Cricket gas station in Greenville.  Prior to jury selection, the trial court agreed to permit counsel for Booker to "speak[] for the group."  The State struck three black jurors: 281, 81, and alternate juror 215.  Young challenged the strikes, noting of the State's six strikes, three were used on black jurors.  The trial court noted three black jurors were seated.  The State explained it excused Juror 281 because during voir dire, she "expressed some concerns regarding her ability to withstand the duration of the trial.  She indicated she had a substantial number of health issues and wanted to be excused based on those issues."  Regarding Juror 81, the State noted she lived on Prancer Avenue in Greenville County near some of the witnesses.  Finally, the State explained it struck Juror 215 because he lived in the Piedmont area, possibly near many of the witnesses.

Young argued the State's explanations were not "satisfactory rac[e] neutral reasons," and the State did not strike Juror 106, a white, female juror who lived on Piedmont Avenue in Piedmont.  The State argued it did not have any concern about that particular Piedmont address and it did not "know the geography of Greenville County with enough sophistication to appreciate the minor details of the community . . . ."  The trial court noted Young made a valid point but denied the motion, relying on *State v. Tucker*, 334 S.C. 1, 512 S.E.2d 99 (1998), and *Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205 (1998), and finding no discriminatory intent inherent in the State's explanation.  After the presentation of the case, the jury convicted Young and the court denied all post trial motions.  This appeal followed.

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only and is bound by the trial court's factual findings unless those findings are clearly erroneous.  *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009).  Thus, on review, the court is limited to determining whether the trial court abused its discretion.  *Id.*  A

---

[1] Kinjta Sadler (*State v. Sadler*, Op. No. 2015-UP-013 (S.C. Ct. App. filed Jan. 14, 2015)), Michael Antonio Williams, and Esaiveus Frantrez Booker were tried together as Young's codefendants.
[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

trial court's decision constitutes an abuse of discretion when it is unsupported by the evidence or controlled by an error of law.  *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012).  The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence."  *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

## LAW/ANALYSIS

Young argues the trial court erred in denying his *Batson* motion.  We agree.

In *Batson*, 476 U.S. at 89, the Supreme Court of the United States held the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States forbids a prosecutor from challenging "potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  In *Georgia v. McCollum*, 505 U.S. 42, 59 (1992), the Supreme Court held the Constitution also prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges.  When one party strikes a member of a cognizable racial group, the trial court must hold a *Batson* hearing if the opposing party requests one.  *State v. Haigler*, 334 S.C. 623, 629, 515 S.E.2d 88, 90 (1999).

In *State v. Giles*, our supreme court explained the proper procedure for a *Batson* hearing:

> First, the opponent of the peremptory challenge must make a prima facie showing that the challenge was based on race.  If a sufficient showing is made, the trial court will move to the second step in the process, which requires the proponent of the challenge to provide a race neutral explanation for the challenge.  If the trial court finds that burden has been met, the process will proceed to the third step, at which point the trial court must determine whether the opponent of the challenge has proved purposeful discrimination.

407 S.C. 14, 18, 754 S.E.2d 261, 263 (2014) (citations omitted).

Merely denying a discriminatory motive is insufficient; however, the proponent of the strike need only present a race or gender neutral reason.  *State v. Casey*, 325

S.C. 447, 451-52, 481 S.E.2d 169, 171-72 (Ct. App. 1997). "[A] 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett v. Elem*, 514 U.S. 765, 769 (1995). The explanation "need not be persuasive, or even plausible, but it must be clear and reasonably specific such that the opponent of the challenge has a full and fair opportunity to demonstrate pretext in the reason given and the trial court to fulfill its duty to assess the plausibility of the reason in light of all the evidence with a bearing on it." *Giles*, 407 S.C. at 21-22, 754 S.E.2d at 265. "The burden of persuading the court that a *Batson* violation has occurred remains at all times on the opponent of the strike." *State v. Evins*, 373 S.C. 404, 415, 645 S.E.2d 904, 909 (2007).

In denying Young's motion, the trial court relied on *Tucker* and *Payton*, neither of which we find instructive in this case. In *Tucker*, the State used all six of its preemptory strikes against black jurors. 334 S.C. at 8, 512 S.E.2d at 102. As its race-neutral explanations, the State proffered the first juror was argumentative and the second juror, among other things, lived in a high crime area, did not understand the court process, and stated she could not sign a death verdict form. *Id.* at 8-9, 512 S.E.2d at 102-03. As to the remaining four jurors, the State struck them based on their equivocality regarding the death penalty. *Id.* at 9, 512 S.E.2d at 103. Regarding the first two jurors, our supreme court determined the trial court did not err in finding the reasons for the strikes were race neutral *and noted no similarly situated jurors of a different race were struck*. *Id.* at 8-9, 512 S.E.2d at 102-03. As to the remaining four jurors, our supreme court referenced the deference it gives the solicitor when the solicitor "perceives a person will have difficulty imposing the death penalty." *Id.* at 9, 512 S.E.2d at 103.

In *Payton*, the plaintiff exercised all of his peremptory strikes to remove prospective white jurors. 329 S.C. at 54, 495 S.E.2d at 207. Counsel for the plaintiff stated he used a strike against Juror 18 because she was opinionated and "what we refer to as a *redneck variety*." *Id.* at 55, 495 S.E.2d at 208. Our supreme court found the term "redneck" was "a racially derogatory term applied exclusively to members of the white race" and it was "not a valid race-neutral reason to strike a potential juror." *Id.* at 55-56, 495 S.E.2d at 208. The court found the purported reason for the strike was not a valid race-neutral reason, prefacing its finding by stating it "need not go beyond the second step of the analysis." *Id.* at 55, 495 S.E.2d at 208. The court reminded that "the right to serve on a jury and not to be discriminated against because of race or gender belongs to the potential juror, not the party" and rejected the dual motivation analysis, finding "[o]nce a discriminatory reason has been uncovered . . . this reason taints the entire jury selection procedure." *Id.* at 56-59, 495 S.E.2d at 208-10; *see id.* at 59, 495 S.E.2d

at 210 (explaining other jurisdictions find "a discriminatory explanation will vitiate the entire selection process regardless of the genuineness of the other explanations for the strike").

We find neither of these cases was controlling on the trial court, which failed to exercise its discretion in stating the cases "required [it] to find the reason offered to be deemed race neutral." In this case, the State's stated reason for striking these jurors was a concern that they lived in the same area as some of the witnesses. Regarding Juror 215, the State "was concerned that he may be familiar with some of the witnesses." We agree the State's explanation for striking Jurors 81 and 215−they lived in an area near many of the witnesses−is a race-neutral explanation. Accordingly, the burden shifted to Young to show pretext because a similarly situated juror of another race was seated.

Thus, we look to step three, in which the opponent of the strike must show the reason offered, though facially race-neutral, was actually mere pretext to engage in purposeful racial discrimination. *See Haigler*, 334 S.C. at 629, 515 S.E.2d at 91 ("[T]he opponent of the strike must show that the race- or gender-neutral explanation given was mere pretext."). The opponent of the strike has the burden of proving the pretextual nature of the stated reason for the strike. *State v. Cochran*, 369 S.C. 308, 315, 631 S.E.2d 294, 298 (Ct. App. 2006). "This burden is generally established by showing similarly-situated members of another race were seated on the jury." *Id.* In this case, the State struck two black jurors on the basis they lived in the same area as some of the State's witnesses, yet seated at least one similarly situated white juror. Thus, Young has shown the pretextual nature of the stated reason for the strike.

However, this inconsistent application of a neutral reason does not automatically result in a finding of discrimination if the strike's proponent provides a race-neutral explanation for the inconsistency. *See State v. Kelley*, 319 S.C. 173, 177, 460 S.E.2d 368, 370 (1995) (finding the solicitor provided a racially neutral explanation for why it did not strike a juror with similar characteristics to one previously striken when she stated she was "saving her last strike to use on other potential jurors" who had criminal records). However, the record in this case does not reflect any race-neutral explanation for the solicitor's strikes. Rather, the solicitor stated the following:

> I've offered race neutral reasons. If the Court wants a
> more specific inquiry. I didn't make that address on [the
> white juror who lived on Piedmont], it is something that I

had no concern.  I had concerns about the Piedmont address but not this one.  I don't know the geography of Greenville County with enough sophistication to appreciate the minor details of the community the basis of my strike, Judge.

The trial court recognized Young made "a very valid point."  However, the court stated, "I don't see a discriminatory intent inherent in the proponent's explanation and so I believe those cases require me to find the reason offered to be deemed race neutral."

We find the trial court erred in failing to conduct a proper analysis under the third step of a *Batson* review.  Rather than considering the State's failure to articulate a race neutral reason for its disparate treatment of the jurors, the court seemingly found only that the reason given in the first place was race neutral.  *See State v. Oglesby*, 298 S.C. 279, 281, 379 S.E.2d 891, 892 (1989) (finding the solicitor negated his neutral reason for striking three black jurors when he failed to strike a white juror who was similarly situated); *id.* (finding the solicitor's stated neutral reason "was proven to be a pretext because it was not applied in a neutral manner").  "Furthermore, no showing of actual prejudice is required to find reversible error for the denial or impairment of the right to a peremptory challenge."  *State v. Smalls*, 336 S.C. 301, 309, 519 S.E.2d 793, 797 (Ct. App. 1999).  Thus, we reverse Young's conviction and remand for a new trial.[3]

**CONCLUSION**

Based on the foregoing, the trial court is

**REVERSED AND REMANDED.**[4]

**SHORT, KONDUROS, and GEATHERS, JJ., concur.**

---

[3] Based on our disposition of the *Batson* issue, we decline to address Young's remaining issues.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address the remaining issues because its resolution of a prior issue was dispositive).

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.