## STATE v. LANGFORD.

1. LARCENY.—A DOG is the subject of larceny in this State.
2. PLEADINGS—BURGLARY.—IN AN INDICTMENT for burglary with intent to commit larceny, it is not necessary to allege the particular goods and chattels defendant intended to steal.
3. IBID.—INDICTMENT—COMPOUND LARCENY.—A count in an indictment charging larceny from a building, but not alleging that such building is appurtenant to and within 200 yards of the dwelling, does not charge compound larceny, and such deficiency cannot be supplied by these allegations in another count.
4. IBID.—IBID.—IBID.—PETIT LARCENY—JURISDICTION.—A count in an indictment which does not charge compound larceny, but which does charge petit larceny, should not be quashed, for the Court of General Sessions now has jurisdiction of petit larceny.

Before GAGE, J., Newberry, February, 1899. Reversed.

Indictment against George Langford for stealing a dog, and for burglary in breaking and stealing from a dog house. From order quashing the indictment on demurrer of defendant, the State appeals.

*Messrs. Solicitor T. S. Sease, Eugene S. Blease* and *Assistant Attorney General U. X. Gunter,* for appellant. The latter cites : *In indictment for burglary, it is not necessary to specify particular goods stolen:* 24 S. C., 116. *Old rule that dog was not subject of larceny has been dispelled by eminent Courts:* 15 Am. Dec., 355; 86 N. Y., 365; 74 N. W. R., 918. *Dogs are made property by statute:* Rev. Stat., 224, 228.

*Messrs. Johnston & Welch,* contra, cite : *At common law there could be no larceny of a dog:* 14 Rich., 363; 48 Ala., 161; 41 Ark., 479; 79 Ind., 9; 27 Ind., 62; 34 N. H., 523; 4 Park Cr. R., 386; 81 N. C., 527; 26 Ohio St., 400; 8 S. & R., 571; 3 Tex. App., 489; 13 Tex., 55; 100 Mass., 140; 48 Conn., 346. *Have we any statute which makes a dog the subject of larceny?* 13 S. C., 4; 2 Stat., 478; 12 Stat., 517; 13 Stat., 25; 12 Rich., 251; 21 Stat., 115; 12 Stat., 407; 16 Stat., 631. *What is the meaning of "live stock?"* 17 S. W. R., 117; 2 L. R. A., 148; 65 Ia., 336. *Statute taxing dogs created no higher property in them than existed under the common law:* 54 S. C., 481. *Compound larceny is stealing from the dwelling house or from one within two hundred yards and appurtenant to it:* 24 S. C., 118; 1 N. & McC., 283; 45 S. C., 490; 18 S. C., 137. *And a count charging compound larceny must so allege:* 45 S. C., 488.

June 17, 1899. The opinion of the Court was delivered by

MR. JUSTICE JONES. In this case the State appeals from an order quashing an indictment, containing two counts— one charging burglary of a dog house within 200 yards of and appurtenant to the dwelling of Mary Nichols, with

intent to steal, &c., the goods and chattels of Mary Nichols in the said dog house; the other count charging larceny of a dog of the value of $10 of the proper goods and chattels of Mary Nichols, then and there being found in the said dog house. In sustaining the demurrer to the indictment the Circuit Court held: (1) that larceny cannot be committed of a dog; (2) that the intent to steal goods and chattels, charged in the first count, necessarily implies the stealing of a dog, because from a dog house, and that the offense of burglary is, therefore, not charged; (3) that it is not compound larceny to steal from a dog house, as alleged in the second count.

1. The first and principal question presented is whether a dog is the subject of larceny. By the old common law, larceny could not be committed of a dog. The reasons assigned for this were the baseness of the nature of such creature; that it was kept for mere whim and pleasure; that being unfit for food, it was of no intrinsic value; that the penalty for the felony of larceny was too severe to apply for the stealing of so contemptible a creature. By the Statute of 10 George III., ch. 18 (George III. was fond of stag hunting), the taking and carrying away of a dog was made punishable, but not as larceny. Under the reasoning satisfactory at that day, it was larceny to steal a tame hawk, but not larceny to steal a tame dog, although it was larceny to steal the hide of a dead dog. Yet by the common law dogs were held to be such property as would sustain an action of trover for their recovery. Civil remedies were permitted for injury to or loss of dogs, and they would go to the executors and administrators as property. The reason for the outlawry of dogs in favor of thieves can hardly be regarded as persuasive at this day and here, and such crude application of the principles of the common law must yield to common sense. The fitness of an animal for food is not the only test of its value to mankind; its capacity for useful service in other ways is often the real test of value. Nor is the fact that an animal is kept for the whim and

pleasure of its owner any sort of reason for excluding it
from the law of larceny as a thing of no value, for amuse-
ment has its valuable uses to man.   Neither is it just to say
of the dog that its nature is so base as to render it unworthy
of protection as absolute property, for Baron Cuvier says the
dog is the "completest, the most singular, and the most use-
ful conquest ever made by man."   When we are told that
the Greeks and Romans employed dogs in war, armed with
spiked collars, and that Corinth was saved by war dogs
which attacked and checked the enemy until the sleeping
garrison were aroused, we better understand Shakespeare's
Antony when he said, "Cry havoc, and let slip the dogs of
war."   We should not let our contempt for sheep-killing
dogs and our dread of hydrophobia do injustice to the noble
Newfoundland, that braves the water to rescue the drowning
child; to the Esquimaux dog, the burden bearer of the arctic
regions; to the sheep dog, that guards the shepherd's flocks
and makes sheep raising possible in some countries; to the
St. Bernard dog, trained to rescue travelers lost or buried in
the snows of the Alps; to the swift and docile greyhound;
to the package carrying spaniel; to the sagacious setters and
pointers, through whose eager aid our tables are supplied
with the game of the season; to the fleet fox hounds, whose
music when opening on the fleeing fox is sweet to many
ears; to the faithful watch dog, whose honest bark, as Byron
says, bays "deep-mouthed welcome as we draw near home;"
to the rat-exterminating terrier; to the wakeful fice, which
the burglar dreads more than he does the sleeping master; to
even the pug, whose very ugliness inspires the adoration of
the mistress; to the brag 'possum and coon dog, for which
the owner will fight if imposed upon; and lastly, to the pet
dog, the playmate of the American boy, to say nothing of
the "yaller dog," that defies legislatures.   Of all animals the
dog is most domestic.   Its intelligence, docility and devotion
make it the servant, the companion and the faithful friend of
man.   The raising and training of dogs are now pursued
by many as a business, large sums of money are invested in

them, and they are bought and sold as other property. In this State, by statute, dogs are and have long been taxed as personal property, according to value and for revenue. As stated in *Salley* v. *R. R.*, 54 S. C., 484: "What the law taxes as personal property it will protect as such." This legislation is potent in two ways: (1) If the common law rule, notwithstanding the fallacy of the reasoning upon which it is based, as applied to present conditions, should be held of force in this State, in the absence of modification by statute, then the statute taxing dogs as personal property ad valorem and for revenue is a modification of the common law rule. (2) It brings dogs as personal property and things of value within the meaning of "chattels" in our State as to simple larceny—see 160 Criminal Code, the term "chattel" including all kinds of *property* except freehold, or things parcel thereof, and perhaps choses in action. In the case of *Ward* v. *State,* 48 Ala., 161, 17 Am. Rep., 31, holding that there is no such property in dogs as makes them the subject of larceny, the Court was influenced by the absence of any statute modifying the common law, and the fact that dogs were not taxed as other property in that State. Likewise, in the case of *State* v. *Doe,* 79 Ind., 9, 41 Am. Rep., 599, the Court, while holding dogs not the subject of larceny, said: "If dogs were taxed in this State (Indiana) as other property for revenue purposes, it would be a strong circumstance to show an intent on the part of the legislature to abrogate the common law rule, and make them the subjects of larceny like any other personal property." In the case of *Mullaly* v. *People,* 86 N. Y., 365, a strong case in support of the view of this Court, the Court said: "It can scarcely be supposed that the legislature meant to regard dogs as property for purposes of taxation, and yet leave them without protection from thieves." Sustaining our conclusion, among others are the following cases: *State* v. *Brown,* 8 Bax., 53, 40 Am. Rep., 81; *Hornsby* v. *Sampson* (Iowa), 40 L. R. A., 508, and a very able and exhaustive note on property rights in dogs, beginning at page 503.

2. The Circuit Court also erred in holding, "that the intent to steal goods and chattels, charged in the first count, necessarily implies the stealing of a dog, because from a dog house." The first count did not charge intent to steal a dog, but intent to steal the goods and chattels of the prosecutrix in said dog house. It is not a necessary inference that no chattel other than a dog could be in a dog house, as there might have been other chattels there, such, for example, as collar and chain, block and chain, vessel for food and water, &c., or, indeed, any other chattel the proprietor might see fit to place therein. The first count could, therefore, be sustained as a count for burglary, without reference to the question whether a dog is the subject of larceny. In indictments for burglary with intent to commit larceny, it is not necessary to specify the particular goods and chattels the defendant intended to steal. 3 Enc. Pl. & Prac., 776. It is urged against this that such want or specification would prevent the plea of former acquittal or conviction; but not so, for such plea is available if the same burglarious breaking and entering is the essential ingredient in both charges:

3. In reference to the second count, we think the Circuit Court correctly held that it failed to charge a compound larceny. In alleging a larceny from "said dog house," this count did not allege that the dog house was appurtenant to and within 200 yards of the dwelling house. This was alleged in the first count, but the rule is that the sufficiency of each count must be determined by its own allegations, without aid from another count. *State* v. *Johnson,* 45 S. C., 483. But, nevertheless, it was error to quash the second count, because it was good as a count for simple larceny, and the Court of General Sessions has concurrent jurisdiction in all cases of larceny triable by magistrate. See Constitution, art. 5, sec. 18, applied in reference to larceny of live stock, in the case of *State* v. *Crosby,* 51 S. C., 249.

The judgment of the Circuit Court is reversed, and the case remanded for further proceedings.