519 S.E.2d 793

**The STATE, Respondent,**

v.

**John H. SMALLS, Appellant.**

**No. 3020.**

Court of Appeals of South Carolina.

Heard May 12, 1999.

Decided June 28, 1999.

Chief Attorney Daniel T. Stacey and Assistant Appellate Defender Melody J. Brown, both of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor David P. Schwacke, of North Charleston, for respondent.

HUFF, Judge:

A jury convicted John Smalls of first degree burglary and attempted grand larceny, and the trial court sentenced him to concurrent terms of fifteen and five years, respectively. Smalls appeals, arguing the trial court erred in finding the defense violated *Batson* and in refusing to dismiss the burglary indictment on grounds of subject matter jurisdiction. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

In March 1997, a Charleston County Grand Jury indicted John Smalls on one count of first degree burglary and one count of attempted grand larceny. At trial, Smalls used nine of ten peremptory strikes to remove white jurors from the venire. The State objected pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), alleging the defense utilized the strikes in an intentionally discriminatory manner. The trial court then asked defense counsel to give race-neutral reasons for the strikes, to which she responded, "A lot of this was just looking at the potential jurors and seeing—if they don't look at me or if they look with a mean, stern look." She further explained that she believed those persons who tended to look away or glare were not open-minded, and stated that such veniremen "have already made their minds up, and I don't want them on the jury."[1] While the trial judge admitted counsel's stated explanation "possibly could be reasonable," he determined it was not sufficiently race-neutral. As a result, the court returned the jury panel to the pool, and a new jury was drawn and sworn. The new panel contained four members originally struck by the defense.

At the close of the State's case, Smalls moved to set aside the burglary charge because the indictment failed to allege the garage broken into was within 200 yards of the victim's house. The trial court denied the motion, finding the indictment sufficiently charged the offense of burglary in the first degree. Smalls subsequently was convicted of both offenses, and the trial court sentenced him to fifteen years on the first degree burglary and five years on the attempted grand larceny, to be served concurrently.

## ISSUES

Smalls argues the trial court erred in (1) granting the State's motion pursuant to *Batson*, where four of the jurors originally struck by the defense were subsequently seated on

---

1. Defense counsel also stated she struck two jurors for other reasons, specifically, one who had relatives with law enforcement and another who was the victim of a burglary. The trial court accepted these reasons as race-neutral.

the jury, and (2) refusing to dismiss the burglary indictment for lack of subject matter jurisdiction because the indictment failed to state an essential element of the offense.

## LAW/ANALYSIS

Because Smalls' second argument concerns subject matter jurisdiction, we consider it first.

### 1. Refusal to Dismiss Indictment

An objection to a defect appearing on the face of an indictment usually must be raised before the jury is sworn. S.C.Code Ann. § 17–19–90 (1985); *State v. Warren*, 330 S.C. 584, 500 S.E.2d 128 (Ct.App.1998). Issues related to subject matter jurisdiction, however, may be raised at any time. *Carter v. State*, 329 S.C. 355, 495 S.E.2d 773 (1998); *Browning v. State*, 320 S.C. 366, 465 S.E.2d 358 (1995).

Smalls was indicted for burglary in the first degree pursuant to S.C.Code Ann. § 16–11–311. The indictment at issue alleged that Smalls did:

> ... wilfully, unlawfully and feloniously enter the dwelling of Marion Puckhaber ... in the nighttime, without the consent of the owner and with the intent to commit a crime therein .... in violation of § 16–11–311 of the South Carolina Code of Laws (1976) as amended.

Smalls, however, asserts the State's proof showed the building actually broken into was in fact Puckhaber's garage, located approximately fifty-three feet behind her "dwelling." Smalls argues the court lacked subject matter jurisdiction because the indictment failed to allege the essential element that the Puckhaber garage was within 200 yards of the residence. We disagree.

A person is guilty of first degree burglary if the person "enters a dwelling without consent and with intent to commit a crime in the dwelling, and ... (3) the entering or remaining occurs in the nighttime." S.C.Code Ann. § 16–11–311(A) (Supp.1998). For purposes of this statute, " 'dwelling' means its definition found in § 16–11–10 and also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person." S.C.Code Ann.

§ 16–11–310(2) (Supp.1998). With respect to burglary, § 16–11–10 defines "dwelling house" as follows:

> ... any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance shall be deemed parcels.

S.C.Code Ann. § 16–11–10 (1985).

Smalls contends *State v. Evans,* 18 S.C. 137 (1882), and *State v. Langford,* 55 S.C. 322, 33 S.E. 370 (1899), neither of which have been expressly overruled, stand for the proposition that an indictment for burglary of a building that is not the actual dwelling house itself must allege that it was within 200 yards of the dwelling house. In *Evans,* the supreme court, interpreting the same statutory language as that in § 16–11–10, held an indictment insufficient where it alleged a burglary in a "gin house, situate within the curtilage of the said dwelling-house," because it failed to allege the gin house was within 200 yards of the dwelling house and appurtenant to it, two elements the statute required. *Evans,* 18 S.C. at 138–139. Similarly, *Langford* held an indictment for compound larceny of items in a dog house must allege that the dog house was appurtenant to, and within two hundred yards of, the dwelling house. *Langford,* 33 S.E. at 372.

■ The State, on the other hand, argues that § 16–11–10 is now a definitional statute referenced in the burglary statute of § 16–11–310, and maintains that "dwelling," as referenced in § 16–11–310 and defined in § 16–11–10, incorporates all outbuildings within 200 yards of the actual "dwelling house." [2] We agree. *See Padgett v. State,* 324 S.C. 22, 29 n. 2, 484 S.E.2d 101, 104 n. 2 (1997) (noting, under S.C.Code Ann. § 16–11–10, "dwelling" is *defined* as "any building in which a person sleeps or lodges *and all other buildings within two hundred*

---

2. We note, of course, that the definitional statute also requires that the outbuilding be appurtenant to the actual "dwelling house" as well. The appurtenance of the building is not an issue in this case.

*yards of it."*) (emphasis added). Furthermore, the true test of an indictment's validity is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. *Browning v. State, supra.* The indictment at hand charges that Smalls entered the victim's dwelling without consent, with the intent to commit a crime, and that the incident occurred in the nighttime. We therefore find the indictment for first degree burglary sufficient. *See State v. Shoemaker,* 276 S.C. 86, 275 S.E.2d 878 (1981) (stating an indictment phrased substantially in the language of the statute which creates and defines the offense is ordinarily sufficient).

## 2. *Batson* Challenge

■ Smalls argues the trial court also erred in granting the State's *Batson* motion. We agree.

Initially, we address the State's assertion that Smalls' *Batson* argument is not preserved for appellate review because he did not object to the impanelment of the second jury. Our supreme court, however, recently addressed this question in *State v. Ford,* 334 S.C. 59, 512 S.E.2d 500 (1999). There, as here, the defendant failed to object to the composition of a second jury drawn immediately after the first was quashed on *Batson* grounds. The court stated that, because defense counsel's argument and the judge's ruling on the issue were contained in the record, "[f]urther objection would have been useless and unnecessary." *Id.* at 64, 512 S.E.2d at 503. We therefore find this argument is preserved for our review.

■ On the merits, Smalls contends the trial court erred in failing to accept the reason stated as race-neutral. We agree. It is incumbent upon the trial court to follow the procedure for *Batson* hearings outlined in *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996) and *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Thus, after a party objects to a peremptory strike of a member of a cognizable racial group or gender (step one), a hearing is convened and the strike's proponent must tender an explanation for it that is racially neutral on its face (step two). *Id.* Once a race-neutral reason is stated, the trial court must

decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. *Id.* At this third step, the burden returns to the party challenging the strike to establish that the explanation is mere pretext. *Id.; Ford* at 64, 512 S.E.2d at 503. An opponent may meet this burden either by showing similarly situated members of another race or gender were seated on the jury, or by demonstrating the reason advanced for the strike is so fundamentally implausible as to constitute mere pretext despite the lack of disparate treatment. *Id.*

In determining whether a party exercised strikes in violation of *Batson,* a reviewing court must examine the totality of facts and circumstances in the record surrounding the strikes. *Ford* at 64, 512 S.E.2d at 503 While the composition of the jury panel is a factor that may be considered in evaluating purposeful discrimination,[3] the mere fact that a defendant used most of his peremptory strikes against a particular race or gender is not by itself sufficient to establish it. *Ford* at 66, 512 S.E.2d at 504. Moreover, unless a discriminatory intent is inherent in the proponent's explanation at the second step of the analysis, the reason offered will be deemed race-neutral. *State v. Tucker,* 334 S.C. 1, 512 S.E.2d 99 (1999); *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998). The explanation given at this step is not required to be persuasive or even plausible. *Ford* at 64, 512 S.E.2d at 503. In *Purkett,* the Court stated as follows:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the [proponent's] explanation.'
>
> \*     \*     \*
>
> It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to

---

**3.** *Ford* at 64, 512 S.E.2d at 503.

disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious. *The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.* *Purkett,* 514 U.S. at 767–768, 115 S.Ct. at 1771 (emphasis added) (citations omitted).

We discern no discriminatory intent inherent in the defendant's explanation. We therefore find the reason asserted by Smalls for his peremptory strikes, that the jurors were either refusing to look or looking in a "mean," "stern" or "accusatory" manner, was facially race-neutral, even if perhaps suspect. *See State v. Tucker,* supra; *State v. Wilder,* 306 S.C. 535, 413 S.E.2d 323 (1991) (counsel may strike venire persons based on their demeanor and disposition). The trial court erred, therefore, in failing to require the State to carry its burden to present evidence of pretext as prescribed by step three of the *Adams/Purkett* analysis. *See Ford* at 66, 512 S.E.2d at 504 (finding opponent of strikes failed to offer evidence of pretext as required by step three of the analysis); *Adams,* 322 S.C. at 124, 470 S.E.2d at 372 (stating that "[u]nder some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, *at the third step of the analysis,* that the explanation was mere pretext") (emphasis added); *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771 (opponent of strike bears ultimate burden of persuasion regarding racial motivation); *cf. Payton v. Kearse,* 329 S.C. at 55–56, 495 S.E.2d at 208 ("redneck" is not race-neutral on its face so there is no need to reach the third step of the analysis).

█ Furthermore, no showing of actual prejudice is required to find reversible error for the denial or impairment of the right to a peremptory challenge. *Ford* at 66, 512 S.E.2d at 504; *State v. Short,* 333 S.C. 473, 511 S.E.2d 358 (1999). Accordingly, Smalls' convictions for first degree burglary and attempted grand larceny are

**REVERSED and REMANDED.**

HOWELL, C.J., and HOWARD, J., concur.