THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Hugh Lussardi, Appellant.
 
 
 

Appeal From Spartanburg County
 J. Derham Cole, Circuit Court Judge

Unpublished Opinion No. 2005-UP-529
Submitted September 1, 2005  Filed September 16, 2005  

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, Office of Appellate Defense, of Columbia, for Appellant.
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant  Attorney General Deborah R. J. Shupe, Office of the Attorney General, of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  A jury found Hugh Lussardi guilty of first degree burglary and grand larceny.  He was sentenced to life in prison for first degree burglary and five years for grand larceny.  Lussardi appeals, arguing the indictment was insufficient, the trial court erred by allowing the State to introduce Lussardis two prior burglary convictions because they were more prejudicial than probative, and the trial court erred by sentencing Lussardi to life imprisonment without parole because his two prior burglaries were committed in a continuous course of conduct.  We affirm.[1] 
 
 FACTS
 On January 28, 2002, Jody Mabry returned home from work and discovered that the doors to his garage[2] were open.  Upon inspection, Mabry noticed that the walk-in door had been smashed and his four-wheeler was missing.  Mabry also noticed fresh four-wheeler tracks leading out of the building, around the building, through the woods behind the building, and then turning right onto Mount Olive Road.  After discovering that his four-wheeler was gone, Mabry walked to his grandmothers house to inquire if she had seen anyone around his house during the day.  Mabry then returned home and called the police.  Officer Randall Bogan dusted for fingerprints on the garage and on a bar that was used to pry the door open, but he was unable to get any prints.
 Sheila Culbreth, who is Mabrys Aunt and lives across the street from Mabry, testified she heard her dogs barking that afternoon, so she went to her door to see what was outside.  When she looked outside, she saw two men walking up the road.  She testified that one of the men had long blonde hair and was wearing a type of cap on his head.  She said the other man had dark hair.  Culbreth said she did not get a good look at their faces because they never looked at her.  Shortly after Culbreth saw the two men in the street, she heard a banging noise and something running in the distance, but she did not see anything.  Culbreth saw the dark-haired man, who she later identified as Lussardi, again about two or three days later when she found him standing in her driveway when she came home from work.  She saw his face and noticed that he had a beard. 
 Thomas Lawter testified that Lussardi was at his house on January 28 and Lussardi wanted him to help him go get a four-wheeler.  The two men had been drinking at Lawters house.  Lawter said Lussardi used a steel rod to break into Mabrys garage and then drove Mabrys four-wheeler out of the garage.  Lawter said he was scared and hid in the woods while Lussardi broke into the building, but he got on the back of the four-wheeler after Lussardi had stolen it.  The two of them then rode the four-wheeler through the woods to Lawters house on Corn Mill Road and parked the vehicle behind Lawters house.  The next morning, Lussardi sold the four-wheeler to a third party.  Lawter gave a statement to the sheriffs department on February 7, 2002, after the police had come to his house looking for Lussardi.  Lawter agreed to plead guilty to the charge.  Lawter said that he had long gray hair and was wearing a bandana at the time of the incident.     
 Lussardi was found guilty of first degree burglary and grand larceny.  He was sentenced to life in prison for first degree burglary and five years for grand larceny.  Lussardi made a motion for a new trial, which was denied.  Lussardi now appeals. 
 
 
 
 LAW/ANALYSIS 
 I.  Indictment      
 
 Lussardi argues the trial court erred by allowing the case to go forward as a first degree burglary case and by denying his motion for new trial because the indictment was insufficient.  We disagree.
 On appeal, Lussardi claims the indictment failed to give him notice of what he was called upon to defend and failed to protect him against double jeopardy because it stated that Lussardi entered Mabrys dwelling.  Lussardi did not directly raise this issue to the trial judge as a defect in the indictment, but indirectly raised it in his request to suppress Lussardis prior record on the basis that the statute violates the United States and South Carolina Constitutions.  Lussardi argued that Mabrys garage was a building, not a dwelling; and therefore to allow the introduction into evidence of his prior record merely for the purposes of establishing a burglary first brings into question his ability to defend himself because he has a right not to be incriminated.[3]  In response, the trial judge ruled that based upon that case law and those prior determinations by our courts, I find that the defendants motion to preclude and exclude such evidence should be denied.  Because the issue of whether the indictment failed to give him notice of what he was called upon to defend and failed to protect him against double jeopardy was not raised to or ruled upon by the trial judge, the issue is not preserved for appeal.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).  However, even if this issue were properly preserved, we find no error.  
 A person is guilty of first degree burglary if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and . . . (2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking.  S.C. Code Ann. § 16-11-311(A) (2003).  For purposes of this statute, [d]welling means its definition found in § 16-11-10 and also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person.  S.C. Code Ann. § 16-11-310(2) (2003).  With respect to burglary, section 16-11-10 of the South Carolina Code (2003) provides that a dwelling house also includes all houses, outhouses, buildings, sheds and erections which are within two hundred yards of [the dwelling house].  State v. Smalls, 336 S.C. 301, 306-07, 519 S.E.2d 793, 795 (Ct. App. 1999).
 An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and if an acquittal or a conviction thereon may be pleaded as a bar to any subsequent prosecution.  State v. Owens, 293 S.C. 161, 165, 359 S.E.2d 275, 277  (1987).  The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.  Browning v. State, 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995).  An indictment phrased substantially in the language of the statute which creates and defines the offense is ordinarily sufficient.  State v. Shoemaker, 276 S.C. 86, 88, 275 S.E.2d 878, 878 (1981).  
 The indictment in this case expressly referenced section 16-11-311 of the South Carolina Code (2003) and specifically alleged that Lussardi entered Mabrys dwelling without his consent and with the intent to commit a crime therein, and that he had two prior burglary convictions.  We therefore find the indictment for first degree burglary was sufficient.
 II.  Prior Convictions
 Lussardi argues the trial court erred by allowing the State to introduce Lussardis two prior burglary convictions because they were more prejudicial than probative.  We disagree.
 A person is guilty of first degree burglary if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and . . . (2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking.  S.C. Code Ann. § 16-11-311(A) (2003).  To deter repeat offenders, the General Assembly chose to include two or more prior burglary and/or housebreaking convictions as an element of first degree burglary.  State v. Benton, 338 S.C. 151, 154, 526 S.E.2d 228, 230 (2000).  In State v. Benton, our Supreme Court ruled that section 16-11-311(A)(2) does not violate due process because it is reasonably designed to accomplish its purpose.  Id.  Furthermore, a defendant cannot require the State to stipulate to the prior conviction in lieu of informing the jury about the prior convictions.  Id. at 155, 526 S.E.2d at 230.  Addionally, due process does not bar the admission of prior crimes simply because there is an accompanying prejudicial effect.  Id.       
 In State v. James, 355 S.C. 25, 32, 583 S.E.2d 745, 748 (2003), the Supreme Court reaffirmed the steps it provided in Benton to avoid an improper conviction:

 To ensure a defendant is not convicted on an improper basis while allowing the State to prove the elements of first degree burglary, the trial court should limit evidence to the prior burglary and/or housebreaking convictions . . . .  Particular information regarding the prior crimes should not be admitted.  Addionally, the trial court . . . should, on request, instruct the jury on the limited purpose for which the prior crime evidence can be considered.

 Benton, 338 S.C. at 156, 526 S.E.2d 230.
 Here, the State only offered evidence of Lussardis two prior convictions that were required to establish the statutory element of first degree burglary.  Also, the court limited the admissible evidence to the existence of Lussardis prior convictions and did not allow any evidence regarding the particular circumstances of those convictions to avoid undue prejudice.  Furthermore, the trial judge provided a limiting charge to the jury.  Therefore, the probative value of admitting Lussardis prior burglary convictions was not outweighed by their prejudicial effect.  Rule 403, SCRE.  
 III.  Continuous Course of Conduct
 Lussardi argues the trial court erred by sentencing Lussardi to life imprisonment without parole because his two prior burglaries were committed in a continuous course of conduct.  We disagree.  
 At trial, Lussardi claimed a life sentence was cruel and unusual punishment considering the fact[s] and the number of years that elapsed between the prior convictions.  However, Lussardi never raised the continuous course of conduct issue to the trial judge.  It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.  Wilder Corp., 330 S.C. at 76, 497 S.E.2d at 733.  Therefore, because the continuous course of conduct issue was not raised to or ruled upon by the trial judge, that issue is not preserved for our review.
 AFFRIMED.
 GOOLSBY, BEATTY, and SHORT, J.J., concur. 
 
 [1] We decide this case without oral argument pursuant to Rule 215, SCACR.
 [2] Mabry testified that the garage is located on his property, 126 feet from his home, and is used by the family every day.
 [3] On appeal, Lussardi contends the indictment should have stated that the garage was a building within two hundred yards of Mabrys dwelling house.