[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15084
_____

D.C. Docket No. 4:14-cr-00027-MW-CAS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TORRANCE JAMES LOCKETT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 21, 2016)

Before TJOFLAT, MARTIN, and ANDERSON, Circuit Judges.

MARTIN, Circuit Judge:

Torrance Lockett was sentenced based on the Armed Career Criminal Act

(ACCA), a federal three-strikes statute that requires a minimum of 15 years in

prison for firearm offenders with three "violent felony" convictions. See 18 U.S.C. § 924(e)(1). ACCA defines "violent felony" in several ways. The District Court counted Mr. Lockett's two earlier South Carolina burglary convictions using the definition in ACCA's "enumerated clause," which covers any "burglary" that is "punishable by imprisonment for a term exceeding one year." Id. § 924(e)(2)(B). This was error. The enumerated clause does not cover state burglary offenses whose elements are broader than the generic definition of burglary. South Carolina's burglary offense is broader than generic burglary. The offense also does not divide into "multiple, alternative" offenses. Descamps v. United States, __ U.S. __, __, 133 S. Ct. 2276, 2285 (2013). This means federal sentencing courts can't know if someone convicted of South Carolina burglary was convicted of generic burglary. We therefore reverse Mr. Lockett's sentence.

## I.

On February 3, 2014, Mr. Lockett was frisked by a Tallahassee police officer based on a tip that someone matching his description had been seen with a handgun. The officer found a handgun on Mr. Lockett and arrested him. Mr. Lockett had previously been convicted of felony offenses in both South Carolina and Florida. The federal government learned of Mr. Lockett's case, and a grand jury charged him with violating 18 U.S.C. § 922(g)(1), which makes it a federal

2

crime for convicted felons to possess firearms.  Mr. Lockett pleaded guilty to this crime on August 4, 2014, and was sentenced on October 23, 2014.

His presentence investigation report recommended a minimum sentence of fifteen years under ACCA because he had four prior burglary convictions.  Two of these convictions were from South Carolina and two were from Florida.  Mr. Lockett conceded that the Florida convictions counted for ACCA,[1] but he objected to his sentence being increased on account of the two South Carolina convictions. He argued that South Carolina's burglary offense was broader than the generic definition of burglary and that it was also not divisible.  The District Court disagreed on the second point.  This disagreement led the court to look to facts from Mr. Lockett's South Carolina cases, and make the finding that he had been convicted of conduct that matched generic burglary.  Because three violent felony convictions trigger ACCA, the court sentenced Mr. Lockett to ACCA's mandatory minimum 15 years in prison.  This is his direct appeal.

---

[1] This concession may have been due to James v. United States, 550 U.S. 192, 127 S. Ct. 1586 (2007), which held that Florida burglary is covered by ACCA's residual clause.  Months after Mr. Lockett's sentencing, the Supreme Court overruled James and held that ACCA's residual clause is unconstitutional.  See Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551, 2563 (2015).  This being the case, Mr. Lockett's Florida convictions wouldn't count under ACCA's residual clause today.  As for the enumerated clause, our Court has not decided whether Florida burglary is divisible.  But Mr. Lockett did not preserve this issue (not surprising perhaps, given the difficulty of predicting decisions like Johnson) and this appeal does not raise it.

II.

ACCA requires a minimum of 15 years in prison for anyone who "has three previous convictions . . . for a violent felony" and then violates certain federal gun laws. 18 U.S.C. § 924(e)(1). The statute contains more than one definition of "violent felony." The District Court counted Mr. Lockett's South Carolina convictions using the "is burglary" definition in § 924(e)(2)(B)(ii) in ACCA's enumerated clause. Mr. Lockett argues that South Carolina burglary convictions aren't covered by this definition. We review a claim like this de novo. See United States v. Howard, 742 F.3d 1334, 1341 (11th Cir. 2014).

To decide whether a state's burglary offense "is burglary" in the ACCA sense, we first "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e, the offense as commonly understood." Descamps, 133 S. Ct. at 2281. If the elements of the state offense are either "the same as, or narrower than, those of the generic offense," then any conviction under the statute counts. Id. This is called the "categorical approach." Id. For the limited purpose of "help[ing] implement the categorical approach," the Supreme Court has also recognized a "narrow range of cases" in which courts can use what is called the "modified categorical approach." Id. at 2284 (quotation omitted). This approach lets courts review certain documents from the state proceedings (known as "Shepard documents") to find out if the state

4

court convicted the defendant of the generic offense. Id. at 2283–84 (quotation omitted); see also Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005). Even though the modified categorical approach lets courts peek into facts, it "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's." Descamps, 133 S. Ct. at 2285. Our inquiry, in this regard, is always about what elements the defendant was convicted of, not the facts that led to that conviction. Id.

Before Descamps, our Court "assumed that the modified categorical approach could be applied to all non-generic statutes." Howard, 742 F.3d at 1343. "The Descamps decision dictates discarding that assumption." Id. After Descamps, "the modified categorical approach can be applied only when dealing with a divisible statute: a statute that 'sets out one or more elements of the offense in the alternative.'" Id. (quoting Descamps, 133 S. Ct. at 2281). Descamps thus requires us to determine whether a state statute "lists multiple, alternative elements, and so effectively creates several different crimes." Descamps, 133 S. Ct. at 2285 (quotation and alteration omitted). If the statute does this, then Shepard documents will tell us which of these "several different crimes" a defendant was convicted of. If it does not, then no conviction under the statute can be assumed to be generic.

A.

Descamps gave two reasons for why the modified categorical approach applies "only to explicitly divisible statutes." Id. at 2290. First, "ACCA's text and history" show that "Congress made a deliberate decision to treat every conviction of a crime in the same manner." Id. at 2287. This can't work if a "statute sweeps more broadly than the generic crime." Id. at 2283. But it can work if a statute divides into multiple distinct crimes, at least one of which has every element of the generic crime. Why is that? "Because only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime." Id. at 2290.

The second reason for the divisibility requirement is "the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." Id. at 2287. The Supreme Court's Sixth Amendment cases require that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. United States, 530 U.S. 466, 490, 120 S. Ct. 2348 (2000). There is exactly one "exception" to this rule: "the fact of a prior conviction." Id. The reason for this sole exception is that the defendant already had the protection of the Sixth Amendment for that prior conviction. See id. at 488. But see Descamps, 133 S. Ct. at 2294–95 (Thomas, J., concurring in the

6

judgment) (arguing that increasing a sentence based on a prior conviction violates the Sixth Amendment, so all of ACCA is unconstitutional).

ACCA sentences can therefore be based on exactly two things: (1) "the fact of a prior conviction"; and (2) what state law required for the conviction, which is a question of law not fact.  Once a sentencing judge starts examining what was alleged in an indictment to divine what the jury most likely found, she is no longer examining either "the fact of a prior conviction" or what state law says: she has undertaken a new factual inquiry, and this is forbidden by the Sixth Amendment.  The Sixth Amendment contemplates only one way of finding facts: submitting elements to a jury to find beyond a reasonable doubt.  See id. at 2288 (majority opinion) ("The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt.  And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances.").

So, if a state wants its burglary offenses to count for ACCA, it must ensure either that "its statutory definition substantially corresponds to 'generic' burglary," or that "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant."  Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160 (1990).  If a state does either, the indictment and jury charges will always tell us whether the jury

7

convicted a defendant of the elements required for a generic burglary conviction. But if a statute "does not require the factfinder (whether jury or judge) to make that determination," then a conviction under that statute does not count for ACCA. Descamps, 133 S. Ct. at 2293. This is true no matter what a defendant actually did, what an indictment charged, or what evidence a jury saw.

### B.

Descamps also tells us how to figure out if a statute is divisible: by determining if the statute "lists multiple, alternative elements, and so effectively creates several different crimes." 133 S. Ct. at 2285 (quotation and alteration omitted). This means a jury must be required to find one of the alternative elements beyond a reasonable doubt, rather than just convict under a statute that happens to list alternative definitions or alternative means for the same crime without requiring jurors to pick which one applies. See id.

To start with an easy example, suppose a statute provides an element that clearly sweeps beyond the generic crime. For instance, a statute might criminalize assault "with a weapon" but not specify what counts as a weapon. For this offense, "all the jury must find to convict" is use of "an indeterminate 'weapon.'" Id. at 2290. "The jurors need not all agree on whether the defendant used a gun or a knife or a tire iron . . . because the actual statute requires the jury to find only a 'weapon.'" Id. If a person could be convicted under the statute having used a

8

weapon that goes beyond generic assault, the statute is indivisible.  This is true even if "a court blessed with sufficient time and imagination could devise a laundry list of potential 'weapons.'"  Id.  And it is also true "even if in many cases, the jury could have readily reached consensus on the weapon used."  Id.

The question is trickier where, like here, a statute actually lists alternative things, rather than leaving the list to imagination.  The difficulty is that the list could serve a few different functions.  For instance, the list could simply illustrate the sorts of things that are covered by the statute.  These kinds of "illustrative examples are not alternative elements."  Howard, 742 F.3d at 1348.  Howard thus held that Alabama's burglary statute is indivisible because it "provides one definition of building and then includes a non-exhaustive list of things that fall under that definition."  Id.

The list of alternatives could also just create alternative definitions of indeterminate language.  For instance, we know that burglary of curtilage is not generic burglary.  See James v. United States, 550 U.S. 192, 212, 127 S. Ct. 1586, 1599 (2007).  Suppose a burglary statute requires entry of a "dwelling" and then defines dwelling as "either a house or its curtilage."  The fact that this list looks exhaustive and separates curtilage with an "or" doesn't tell us whether jurors were required to decide whether the defendant actually entered the house or only the

9

curtilage.  And if a statute "does not require the factfinder (whether jury or judge) to make that determination," then it is indivisible.  Descamps, 133 S. Ct. at 2293.

To take another example based on Descamps, suppose an assault statute requires the use of a "weapon" and defines "weapon" as a "gun or a knife."  Even if this list of weapons is finite and separated by the word "or,"

> [a]s long as the statute itself requires only an indeterminate 'weapon,' that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention.  And most important, that is all the jury must find to convict the defendant. . . .  Whatever the underlying facts or the evidence presented, the defendant still would not have been convicted, in the deliberate and considered way the Constitution guarantees, of an offense with the same (or narrower) elements as the supposed generic crime (assault with a gun).

Id. at 2290.  Again, this is true "even if in many cases, the jury could have readily reached consensus on the weapon used."  Id.  That's why our inquiry can't end with simply looking at whether the statute is written disjunctively (with the word "or").  The text of a statute won't always tell us if a statute is listing alternative means or definitions, rather than alternative elements.[2]

---

[2] This distinction between alternative "elements" and alternative "means" rings throughout Supreme Court precedent.  For example, Richardson v. United States, 526 U.S. 813, 119 S. Ct. 1707 (1999), held that, while "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element," a "jury need not always decide unanimously . . . which of several possible means the defendant used to commit an element of the crime."  Id. at 817, 119 S. Ct. at 1710.  Descamps cited Richardson to support the proposition that "[t]he Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt.  And the only facts the court can be sure the jury so found are those constituting elements of the offense."  133 S. Ct. at 2288.

The key is the legal effect of the alternatives.  If a "statute lists multiple, alternative elements, and so effectively creates several different crimes," then the statute is divisible.  Id. at 2285 (quotation and alteration omitted).  So, for a burglary statute, the question is whether "the jury is actually required to find all the elements of generic burglary."  Id. at 2284 (quotation omitted).  Again, if a statute "does not require the factfinder (whether jury or judge) to make that determination," then it isn't divisible.  Id. at 2293; see also id. at 2290 "[O]nly divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime.  A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives.  And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." (footnote and citation omitted)); id. at 2296 (Alito, J., dissenting) ("By an element, I understand the Court to mean something on which a jury must agree by the vote required to convict under the law of the applicable jurisdiction.").[3]

_____

[3] Related to this point, the government referenced a footnote from this court's Howard decision to argue that a statute's divisibility turns only on how the statute is phrased, not on what jurors are required to find.  This footnote offered that "it might be helpful, in case the Supreme Court revisits this area . . . to point out that one premise of [Descamps] may be problematic." 742 F.3d at 1343–45 n.3.  This offering was directed to Justice Kagan's statement that courts applying the modified categorical approach "need only check the charging documents and instructions ('Do they refer to a gun or something else?') to determine whether in convicting a

## III.

We turn now to Mr. Lockett's case.  Mr. Lockett's two South Carolina

convictions were for violations of South Carolina Code § 16-11-312(A), which

says: "A person is guilty of burglary in the second degree if the person enters a

dwelling without consent and with intent to commit a crime therein."  S.C. Code

Ann. § 16-11-312(A).  A separate definition section then tells us that "'[d]welling'

means its definition found in § 16-11-10 and also means the living quarters of a

building which is used or normally used for sleeping, living, or lodging by a

person."  Id. § 16-11-310(2).  This is the "definition found in § 16-11-10":

> any house, outhouse, apartment, building, erection, shed or box in
> which there sleeps a proprietor, tenant, watchman, clerk, laborer or

---

defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime." 133 S. Ct. at 2290.

The Howard footnote said this statement is "problematic" because "prosecutors usually are not required to select from multiple statutory phrases or alternative means a single one to include in an indictment or to prove at trial," and "juries are rarely asked to specify in their verdict which of the alternatively charged means they unanimously found beyond a reasonable doubt." 742 F.3d at 1344–45 n.3.

It is true that "prosecutors usually are not required to select from multiple statutory phrases or alternative means." Id.  But they are certainly required to charge and prove elements. And they usually do this in a rote fashion that sentencing courts can easily identify. Likewise, it's true that "juries are rarely asked to specify in their verdict which of the alternatively charged means they unanimously found beyond a reasonable doubt." Id.  But they are asked to specify which elements they so found. That's why the modified categorical approach lets courts look at "extra-statutory documents only to determine which alternative element was the basis for the conviction." Descamps, 133 S. Ct. at 2280. The key is elements, not means or phrases or definitions. If a statute doesn't create alternative elements, it is indivisible. Howard recognizes as much: "[Descamps] holds that the modified categorical approach can be applied only when dealing with a divisible statute: a statute that 'sets out one or more elements of the offense in the alternative.'" Howard, 742 F.3d at 1343 (quoting Descamps, 133 S.Ct. at 2281–82).

12

person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance shall be deemed parcels.

Id. § 16-11-10.  As for § 16-11-310(2)'s use of the word "building," it

means any structure, vehicle, watercraft, or aircraft: (a) Where any person lodges or lives; or (b) Where people assemble for purposes of business, government, education, religion, entertainment, public transportation, or public use or where goods are stored. Where a building consists of two or more units separately occupied or secured, each unit is deemed both a separate building in itself and a part of the main building.

Id. § 16-11-310(1).  Mr. Lockett first argues that this statute sweeps more broadly than generic burglary because it includes locations beyond those included in generic burglary.  He next argues that the statute is indivisible because South Carolina jurors aren't required to unanimously choose any one of the dozens of possible dwellings listed in the statute's definition section.

### A.

We first address whether South Carolina's burglary offense is generic.  It is not.  Generic burglary is (1) "an unlawful or unprivileged entry into, or remaining in," (2) "a building or structure," (3) "with intent to commit a crime."  Taylor, 495 U.S. at 598, 110 S. Ct. at 2158.  That second element does not cover things like boats and vehicles.  See id.; Howard, 742 F.3d at 1348.  South Carolina defines "building" as "any structure, vehicle, watercraft, or aircraft."  S.C. Code Ann.

13

§ 16-11-310(1).  So, as with Alabama's burglary statute, a "number of those things included in the definition of 'building' (such as vehicles and watercraft) fall outside the 'building or structure' element of generic burglary, making the burglary statute non-generic."  Howard, 742 F.3d at 1348.

B.

We next address whether the offense is divisible.  It is not.  Though South Carolina defines "dwelling" using a finite list, prosecutors are never required to select from this list when charging a crime.  And they are never required to prove that a defendant entered anything more specific than a "dwelling," which we know includes places that generic burglary doesn't cover.  "With no such burden placed on the government, we cannot say that the statute creates separate crimes defined by distinct elements so as to permit application of the modified categorical approach."  Donawa v. U.S. Attorney Gen., 735 F.3d 1275, 1283 (11th Cir. 2013).

What elements South Carolina prosecutors are required to prove for a burglary conviction is a question of South Carolina law.  And so we look to the state's courts to answer this question.  See id. at 1282 (deciding a Florida statute is indivisible because Florida courts treat an element needed for the generic offense as an affirmative defense); Howard, 742 F.3d at 136 ("Sentencing courts conducting divisibility analysis in this circuit are bound to follow any state court

14

decisions that define or interpret the statute's substantive elements because state law is what the state supreme court says it is.").

South Carolina law does not require prosecutors to charge one of § 16-11-10's various types of dwellings in the same way they must charge the three elements of burglary in § 16-11-312. In South Carolina—as in most places—"[i]t is a familiar principle that an indictment under a statute charging an offense made a crime thereby, must allege the essential elements prescribed by the statute." State v. Everall, 123 S.E. 824, 825 (S.C. 1924). South Carolina law does not make the type of dwelling an essential element of burglary. For example, in State v. Smalls, 519 S.E.2d 793 (S.C. Ct. App. 1999), a defendant was convicted based on an indictment charging that he did "wilfully, unlawfully and feloniously enter the dwelling of [the victim]." Id. at 305. The trial evidence ended up showing that "the building actually broken into was in fact [the victim's] garage, located approximately fifty-three feet behind her 'dwelling.'" Id. This garage was covered by the definition statute's reference to "all houses, outhouses, buildings, sheds and erections which are within two hundred yards of" a dwelling. Id. (quoting S.C. Code Ann. § 16-11-10). But the defendant claimed the indictment was not valid because it "failed to allege the essential element that [the victim's] garage was within 200 yards of the residence." Id. The South Carolina Court of Appeals disagreed, holding that this was not an essential element. Id.

15

South Carolina's model jury instructions also confirm that juries are not called upon to agree on anything more specific than "entry into a dwelling." These instructions say that "the State must prove the following three elements in order to establish burglary": (1) "entry into a dwelling," (2) "without consent," and (3) "with intent to commit a crime therein." Ralph King Anderson, Jr., South Carolina Requests to Charge - Criminal § 2-14 (2007). The instructions then define "dwelling" using the statute's definition lists. But juries need only agree that the defendant entered "a dwelling" that fits these definitions, rather than unanimously picking one of the possibilities. This means that jurors never need to agree that the defendant entered a generic "dwelling." Sure, reaching this agreement might be easy most of the time. But "even if in many cases, the jury could have readily reached consensus on [this question], a later sentencing court cannot supply that missing judgment." Descamps, 133 S. Ct. at 2290.

The same principle applies to defendants like Mr. Lockett who plead guilty. This is because a defendant

> often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. At trial, extraneous facts and arguments may confuse the jury. (Indeed, the court may prohibit them for that reason.) And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations.

Id. at 2289. For example, suppose a South Carolina prosecutor stated during a plea hearing that a burglary defendant entered the victim's house, even if the evidence

16

would have proved otherwise.  Because entry into a house is not an element, the defendant "may have let the prosecutor's statement go by because it was irrelevant to the proceedings.  He likely was not thinking about the possibility that his silence could come back to haunt him in an ACCA sentencing."  Id.[4]

The constitutional question in ACCA sentencing isn't what facts went unchallenged during a plea hearing.  It's whether the defendant knowingly and intelligently waived her Sixth Amendment right to a jury deciding each of the facts necessary to convict her.  If a jury would not have been required to find a specific fact, a court can't later use this fact as the basis for longer imprisonment.  "The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt.  And the only facts the court can be sure the jury so found are those constituting elements of the offense— as distinct from amplifying but legally extraneous circumstances."  Id.

The definitions of "dwelling" in South Carolina's burglary statute are not alternative essential elements of the offense.  That means Mr. Lockett never had

---

[4] Justice Kennedy's Descamps concurrence narrated this concern in more detail:
Just one of the substantial concerns that the Court is correct to consider is that, in the regular course of the criminal process, convictions may be entered, often by guilty pleas, when either the attorney or the client, or both, have given no consideration to possible later consequences under ACCA.  As a result, certain facts in the documents approved for judicial examination in Shepard may go uncontested because they do not alter the sentencing consequences of the crime, even though their effect is to require a later enhancement under ACCA.  This significant risk of failing to consider the full consequences of the plea and conviction is troubling.
133 S. Ct. at 2293 (Kennedy, J., concurring) (citations omitted).

17

the protection of the Sixth Amendment for the fact of what kind of dwelling (or what part of a dwelling) he entered. Without that protection, we can't assume his South Carolina burglary convictions were generic.

## IV.

South Carolina's burglary offense is neither generic nor divisible. The District Court thus should not have counted Mr. Lockett's two South Carolina convictions and sentenced him using ACCA.[5] We vacate the sentence.

**VACATED AND REMANDED**

---

[5] In fairness to the District Court, its conclusion was based in part on our decision in United States v. Ramirez-Flores, 743 F.3d 816 (11th Cir. 2014). That case addressed the same question as this case, though on plain-error review. We said that "[w]e need not in this case definitively decide that the South Carolina statute at issue is divisible. We need decide only that it is not plain or obvious that the statute is indivisible." Id. at 825; see also id. at 825 (Martin, J., concurring) ("[W]e apply the modified categorical analysis here even though we might not were we conducting de novo review."). The District Court understandably adopted our tentative analysis in Ramirez-Flores when sentencing Mr. Lockett. It may not have been plain error to say South Carolina's statute is divisible, but it was error nonetheless. On de novo review, we agree with Mr. Lockett.

18