**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Melvin Fourney, Sr., Appellant.

Appellate Case No. 2018-000103

Appeal From Chester County
Brian M. Gibbons, Circuit Court Judge

Unpublished Opinion No. 2020-UP-337
Submitted October 1, 2020 – Filed December 16, 2020

**AFFIRMED**

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia, and Solicitor Randy E. Newman, Jr., of Lancaster, all for Respondent.

**PER CURIAM:** A jury convicted Melvin Fourney, Sr. (Fourney) of voluntary manslaughter and possession of a knife during the commission of a violent crime.

On appeal, he argues the trial court erred by (1) not instructing the jury that they could consider evidence of his good character and (2) admitting crime scene and autopsy photographs he contends were cumulative and unfairly prejudicial under Rule 403, SCRE. We affirm.

## I.

Fourney was indicted for the murder of Leonard "Buster" Hayes (Victim) and possession of a knife during the commission of a violent crime. At trial, the State called Victim's Mother, who testified Victim had lived with Fourney at Fourney's house "for years," Fourney thought of Victim as a son, and Fourney and Victim seemed to get along well. However, Victim's Mother testified Fourney called her about a month before the murder and stated "I'm going to kill your son," but she did not think Fourney was being serious. During questioning on cross-examination, Victim's Mother testified she grew up with Fourney and did not know him to be a violent person.

The State then published a recording of a 911 call made by Teresa Fourney (Teresa), Fourney's daughter-in-law. Teresa told the 911 dispatcher Fourney had stabbed Victim, who was not breathing. Fourney then got on the call and confirmed he stabbed Victim approximately twenty minutes earlier. He indicated Victim was not moving.

Edward King Nelson testified he arrived at Fourney's home the morning of the incident. Nelson saw Fourney and Victim arguing, and Fourney "got aggravated and he picked up a knife and he started toward [Victim]," who was sitting on the couch holding a meal. Nelson testified Fourney stabbed Victim in his midsection while Victim was sitting down, and he did not see Victim try to stab Fourney with the knife. On cross, Nelson stated he had known Fourney for a long time, had never knew him to be a violent person, and had never had any trouble with him.

James Fourney, Fourney's son, testified Fourney called him on the morning of the incident asking him to come to the house "right quick," but Fourney did not elaborate. James testified he and Teresa went into the house, and he saw Fourney sitting by the door shaking and Victim sitting on the couch with a bowl in his lap, but he did not check to see if Victim was breathing. James said that on other occasions, he had heard Fourney and Victim "cuss and fuss at each other but that was about it," and he had not seen Fourney be violent before. On cross, James testified he never had trouble with Fourney, he did not know of Fourney having trouble with other people, and he did not know Fourney to be violent.

The State sought to introduce pictures of the crime scene, State's Exhibits 6 through 28, into evidence. Fourney objected to the pictures of Victim at the scene, specifically State's Exhibits "27, 28, 9, 10, 11, 12, and 13," stating:

> [O]bviously the State has a right to introduce evidence of the injury, . . . however there are several pictures of this injury. I also believe of the pictures, particularly the ones that shows a frontal view of [Victim] is more prejudicial than probative and I think they should be excluded.

Fourney noted Victim's body had been moved by the paramedics so "if they're going to say that's the position he was in I don't think they can do that." In rebuttal, the State argued the objected-to photos (1) depicted the defenseless position of Victim at the time of the stabbing, (2) showed Fourney stabbed Victim while Victim was eating, (3) refuted Fourney's claim he only nicked Victim, (4) demonstrated the violent nature of the stabbing, and (5) were not unduly prejudicial. The trial court concluded it would allow the pictures in "because the[y] show the angle of the body as the State argued, which I do think is important and legitimate for the State to try to show and the size of the wound"; however, it excluded State's Exhibit 9 because it would be too prejudicial as it was a full frontal view showing Victim's face and the blood. State's exhibits 6 through 28, with the exception of Exhibit 9, were admitted into evidence.

The State published State's Exhibit 1—Fourney's recorded first interview with the police. During the interview, Fourney waived his *Miranda* Rights and admitted he stabbed Victim. Fourney claimed the incident arose after Victim prepared a meal, and Fourney asked what "they" were eating. Victim responded by picking up a kitchen knife with a five and a half inch blade off the couch; "snagging" Fourney's arm with it; and stating "that's what we are eating." After Victim put the knife down, Fourney picked it up and "hit [Victim] back" in the chest as Victim sat on the couch eating his meal. Fourney moved into evidence Defense Exhibits 1 through 5, the pictures police took of him. These pictures showed Fourney's fingernails that appeared to have traces of blood on them and bruising on Fourney's arm.

Fourney's second recorded interview was also played for the jury. During the second interview, Fourney stated he had a good relationship with Victim, and he never had any prior violent incidents or conflicts with Victim other than "talk[ing] trash back and forth." Fourney asserted he became angry with Victim after Victim "snagged" him on the wrist, so he picked up the knife and stabbed Victim. Fourney stated he did not know he hit Victim that hard and thought he only nicked Victim's shirt.

Next, Teresa, Fourney's daughter-in-law, testified once she and James arrived at Fourney's house, Nelson said, "Y'all better go in there and check on [Victim], I think [Fourney has] stabbed him." Teresa stated she went into the house with James and saw Victim sitting "slunched" down on the couch with his shirt on, she saw blood and flies around Victim, and Victim "felt cold to the touch." Fourney told her to call 911. Teresa testified she told SLED Agent Blackman on the day of the murder, "[Fourney] had stabbed [Victim], he got tired of [Victim]." She further stated she had never known Fourney and Victim to fight or get violent with one another. On cross-examination, Teresa testified she had known Fourney for a long time, he was not a mean or violent person, and he was good to her, James, and Victim. She stated "[Victim] was the kind of person that would mess with people," and she had seen Victim "push around on [Fourney] sometimes."

Dr. Robert Thomas, the pathologist who conducted the autopsy on Victim, testified Victim's sole injury was a single stab wound in the left mid upper chest, an irregular V-shaped incision that measured one inch in one part of the "V" and about one and one quarter inch in the other part of the "V" consistent with the knife that was collected at the crime scene. Dr. Thomas testified Victim's stab wound measured four and a quarter inches in depth. Further, Dr. Thomas stated the toxicology report showed Victim had a blood alcohol level of .210% and .01% cocaine in his system. Dr. Thomas testified the cause of Victim's death was "exsanguination, internal and secondary to the stab wound of the heart," meaning Victim "bled out." On cross-examination, Dr. Thomas stated Fourney somehow twisted the knife in Victim.

The State sought to admit pictures of Victim's autopsy into evidence. Fourney objected to the autopsy pictures because they were "cumulative" and "more prejudicial than probative." The State maintained the photos were important to illustrate the viciousness of the stabbing, the depth of the stab wound, and Fourney's violent intent. The trial court excluded two of the autopsy pictures but admitted the others.

The trial court ruled it would instruct the jury on both murder and the lesser included offense of voluntary manslaughter. Additionally, the trial court decided it would charge the jury on self-defense over the State's objection.

Fourney requested a general charge on character evidence because there has "been testimony by even [V]ictim's [M]other that [Fourney] had not been turbulent, had no reputation for violence[,] and had not been of any bad character." The State contended the proposed charge would be improper because no "clear" reputation evidence had been presented; Fourney countered multiple witnesses had testified to

Fourney's general character. The State also objected to the requested charge on the basis it constituted an impermissible comment on the facts. The trial court agreed the requested instruction was improper, declined to give it, and noted Fourney would be permitted to call the jurors' attention to the character evidence in his closing argument.

During closing argument, Fourney acknowledged he admitted to stabbing Victim. However, Fourney focused the jurors' attention on the testimony indicating he was a "good guy" and was non-violent, maintaining his good character was inconsistent with him having "malice in his heart" at the time he stabbed Victim. Fourney asserted the evidence did not establish he was an "ornery old man"; rather, it established he was good-hearted and non-violent. Fourney contended he must have stabbed Victim in self-defense or Victim must have impaled himself on the knife after Fourney picked the knife up.

The jury acquitted Fourney of murder but convicted him of the lesser included offense of voluntary manslaughter and possession of a knife during the commission of a violent crime. The trial court sentenced Fourney to concurrent terms of ten years' imprisonment for voluntary manslaughter and five years' imprisonment for possession of a knife during the commission of a violent crime. This appeal followed.

## II.

### A. Good Character Jury Instruction

Fourney first contends because there was ample evidence of his good character, he was entitled to a good character jury instruction, including language stating his good character "in and of itself" could create reasonable doubt of his guilt. The State asserts Fourney did not request a jury instruction indicating evidence of good character "in and of itself" could create reasonable doubt, and therefore, Fourney's argument was not properly preserved.

Fourney requested the following general character jury charge:

> The defendant has presented evidence of his good reputation and character to show that it would be inconsistent with his committing the crime. The weight you give that testimony like all other testimony in this case is for you to decide in your good judgement. You may consider the testimony of the defendant's good character

> along with all of the other evidence in deciding whether or
> not the defendant committed the alleged crime.

Fourney never requested the jury be charged that good character "in and of itself" may create reasonable doubt. Therefore, we find the issue is not preserved.

At any rate, after briefing concluded in this case, our supreme court found it improper for a trial court to include the "in and of itself" language as part of a good character charge because it is an unconstitutional comment on the facts. *Pantovich v. State*, 427 S.C. 555, 561–62, 832 S.E.2d 596, 600 (2019).

That does not end our inquiry, however, because Fourney also contends he was entitled to the general good character charge he requested, which did not include the objectionable "in and of itself" clause. *Pantovich* recognized the defendant there would be entitled to a general "non offending" good character charge at his retrial. *Id.* at 563–64, 832 S.E.2d at 601. A criminal defendant may introduce evidence of his good character. *See State v. Lyles*, 210 S.C. 87, 91–92, 41 S.E.2d 625, 627 (1947); Rule 404(a), SCRE; Rule 405, SCRE. The evidence was once restricted to a witness' knowledge of the defendant's reputation for good character, but the 1995 adoption of Rule 405(a), SCRE, permitted the evidence to also come in by opinion testimony. *See* Reporter's Note to Rule 405(a), SCRE. A criminal defendant may also request the jury be instructed that evidence of good character may be considered in deciding whether he committed the crime. *Lyles*, 210 S.C. at 92, 41 S.E.2d at 627; *State v. Barth*, 25 S.C. 175, 178–80 (1886). The trial court therefore erred when it denied Fourney's request for a general good character charge. Because Fourney's requested charge did not contain the "in and of itself" language, stated a correct principle of law, and was supported by the trial evidence, it should have been charged.

However, we find the error harmless because of the overwhelming evidence of Fourney's guilt. *See State v. Green*, 278 S.C. 239, 240, 294 S.E.2d 335, 335 (1982) (finding any error in not charging the jury with good character evidence was harmless because the defendant admitted participation in robbery) (*abrogation recognized on other grounds by Pantovich*, 427 S.C. 555, 832 S.E.2d 596). The jury heard Fourney admit on three separate occasions to stabbing Victim—during the 911 call recording, his first interview, and his second interview. Nelson testified he saw Fourney stab Victim and did not see Victim attack Fourney. There was evidence Fourney stabbed Victim while Victim was eating. There was also Victim's Mother's testimony that Fourney threatened to kill her son. Due to the amount of evidence presented to the jury that Fourney stabbed Victim—and the lack of evidence that

Fourney acted in self-defense—we are confident the jury could not have come to any other rational conclusion than finding Fourney guilty of murder or manslaughter.

## B. Crime Scene and Autopsy Photos

Fourney next asserts the trial court abused its discretion by admitting State's Exhibits 27-28 (crime scene photos of Victim's injury) and State's Exhibits 31 and 34-36 (photos from the autopsy), arguing they were cumulative and unduly prejudicial under Rule 403, SCRE. Fourney asserts Dr. Thomas's testimony was sufficient to enable the State to establish the elements of the offense, especially his detailed testimony of how he measured the wound compared to the knife and his graphic description of how the knife cut Victim from his fourth rib to his sternum.

We conclude the probative value of the pictures was not substantially outweighed by the danger of unfair prejudice. *See State v. Wise*, 359 S.C. 14, 21, 596 S.E.2d 475, 478 (2004) ("The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice."). The crime scene photos depict the defenseless position of Victim sitting on the couch with his shirt off, a bowl of food next to him, and a deep laceration in his upper chest. The autopsy photos depict a close-up picture of the stab wound with a ruler held next to it. The autopsy photos, while graphic, were necessary to help the jury fully understand the testimony, the extent of Victim's injuries, and that Fourney did more than merely nick Victim with a knife. *See State v. Thompson*, 420 S.C. 192, 215, 802 S.E.2d 623, 634 (Ct. App. 2017) ("These [autopsy] photographs, while graphic, were necessary to help the jury fully understand Dr. Durso's testimony regarding the nature of Victim's injuries resulting in his death.").

Further, the photos from both the crime scene and the autopsy corroborated testimony of different witnesses. *See State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 27 (2014) ("If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." (quoting *State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996)). Nelson, James, and Teresa testified there was a single stab wound on his chest, which the two crime scene photos of the stab wound depicted and corroborated. Dr. Thomas testified the autopsy photos helped explain Victim's injury to the jury, such as the nature and depth of the stab wound. *See State v. Jarrell*, 350 S.C. 90, 106–07, 564 S.E.2d 362, 371 (Ct. App. 2002) (finding the trial court did not abuse its discretion by admitting autopsy photos because, even though they were "graphic," they corroborated testimony presented during trial by depicting the victim's injuries and condition). Further, the fact the trial court excluded a photo of the crime scene—State's Exhibit No. 9—because it depicted the full frontal view of

Victim with his face and the blood, and two photos of the autopsy—State's Exhibit 29 and 30—demonstrates it exercised its discretion. *See id.* Therefore, because the probative value of the photos vastly outweighed their potential for unfair prejudice or any other Rule 403, SCRE concern, the trial court did not abuse its discretion in admitting them.

**AFFIRMED.**[1]

**THOMAS, HILL, and HEWITT, J.J., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.